359 F.2d 292
 John W. STAGGERS, individually and/or as assignee of and/or attorney in fact for Young H. Wooh, doing business under the firm name and style of Overseas Juristical Agencies, assignee of and/or attorney in fact for Kongsung Dyestuff Co. Ltd., Plaintiff,
v.
OTTO GERDAU COMPANY, Inc., and Sembodja Corporation of New York, Defendants-Appellees,
Nederlandsche Handel-Maatsch Appij N.V. (also known as The Netherlands Trading Society), Defendant.
Raritan Chemical Corporation, Kongsung Dyestuff Co. Ltd. and Harold Wendell Lady, as Administrator of the Estate of John W. Staggers, deceased, Appellants.
 No. 249.
 Docket 30081.
 United States Court of Appeals Second Circuit.
 Argued January 26, 1966.
 Decided April 11, 1966.
 
 Matthew V. Stepsis, New York City (Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, on the brief), for appellees.
 Deane Ramey, New York City, for appellants.
 Before FRIENDLY and HAYS, Circuit Judges, and BLUMENFELD, District Judge.*
 HAYS, Circuit Judge.
 
 
 1
 The temptation is strong to dismiss this case as a hopeless imbroglio since a series of egregious errors committed by plaintiff's attorney has so far complicated it that it is almost impossible to put it into shape for a consideration of the merits. The fact remains, however, that the merits have never been reached and for all that appears there may be a valid claim for breach of contract. We believe that one more opportunity ought to be given to straighten out the procedural preliminaries so that a trial on the merits can be had. To that end we reverse the orders of the district court and remand the case for further proceedings.
 
 
 2
 The case arises out of two contracts entered into in November 1952, between Kongsung Dyestuff Co. Ltd., a Korean corporation, and Otto Gerdau Company, Inc., a New York corporation, for the sale of 19,000 tons of rice. Appellants seek to recover for a loss totaling $380,000 allegedly sustained as a result of appellees' breach of the contracts in 1953.
 
 
 3
 Although succeeding events have been obscured by alternative and sometimes contradictory positions taken by appellants, the following seems to have occurred:
 
 
 4
 On September 17, 1956, Kongsung delivered to Overseas Juristical Agencies, a Korean law firm, an instrument designating
 
 
 5
 "OVERSEAS JURISTICAL AGENCIES * * our true and lawful attorney in fact, for our organization or as individuals, and in our name, place and stead, to demand and institute legal proceedings for collecting and receiving all sums of money which [are] or may become due, owing, payable and belonging or assigned to us or detained for us by any and all persons whatsoever. And, upon receipt thereof, to execute and deliver effectual receipts, releases and discharges therefor."
 
 
 6
 On March 15, 1957, Overseas delivered to John W. Staggers, an attorney and resident of Maryland, an "Assignment of Claim," which reads in part:
 
 
 7
 "Whereas Otto Gerdau Company and Sambodja Corporation of New York is indebted to the said assignor in the sum of Three Hundred Eighty Thousand Dollars ($380,000) for and on account of Letters of Credit furnished for the purchasing of rice and whereas the said assignor has agreed to assign the said debt to the said assignee for the sum of One Dollar ($1.00).
 
 
 8
 Now this indenture witnesseth, that in consideration of the sum of One Dollar ($1.00) paid by the said assignee, the receipt whereof the said assignor hereby acknowledges, they the said assignors, doth [sic] hereby assign to the said assignee the said debt of Three Hundred Eighty Thousand Dollars ($380,000) now owning [sic] to them by the said debtor, and all their right, title and interest both legal and equitable therein." (Emphasis added.)
 
 
 9
 By the first instrument Overseas received only a general power of attorney, whereas by the second it attempted to convey an "Assignment of Claim." Appellants explain this by directing our attention to a contract between Heu, the president of Kongsung ("A" party), and Wooh, the president of the Far Eastern Trading Co. Inc., and the Chairman of Overseas ("B" party), which was signed on December 8, 1952, and reads in part:
 
 
 10
 "`A' party promised to operate business with `B' party as mutual partners for procurement of foreign rice sales of which are sold to the Office of Procurement, ROK, of contracts, dated, November 15th, 1952 for 10,000 metric tons of rice and November 25th 1952 for 9,000 metric tons of rice." (Emphasis added.)
 
 
 11
 The assignment to Staggers by Wooh, acting as Chairman of Overseas, is assertedly based on this contract. If it is found that Wooh had transferable rights in the contract between Kongsung and appellees, and that he intended to convey his own rights by the assignment, then Staggers must be considered an assignee. An assignee for collection may sue as the real party in interest. See Rosenblum v. Dingfelder, 111 F.2d 406, 407-408 (2d Cir. 1940). The affidavit of Marte Previti, the president of Raritan Chemical Corporation, the New York agent of Kongsung, quotes Wooh as believing that he had conveyed to Staggers a "vested interest in the claim."
 
 
 12
 On January 8, 1959, Staggers, represented by appellants' present counsel, commenced this action in the Southern District of New York, and indicated his uncertainty about his status by using the following caption:
 
 
 13
 "JOHN W. STAGGERS, individually and/or as assignee of and/or attorney in fact for Young H. Wooh, doing business under the firm name and style of OVERSEAS JURISTICAL AGENCIES, assignee of and/or attorney in fact for KONGSUNG DYESTUFF CO. LTD."
 
 
 14
 As part of the pre-trial discovery process, the appellees requested Staggers to produce "all documents" upon which he intended to rely. With the exception of two letters of credit and a few cablegrams, all of the documents were in Korea, in the possession of Kongsung or the government. After lengthy correspondence, Staggers obtained some of the necessary documents from Kongsung, but had to send his son-in-law, Lady, to Korea in order to locate and obtain documents and records (approximately 122 items were photocopied) from the Office of Procurement of the Korean Government. Lady spent several weeks in Korea. On March 12, 1964, at about the time these preparations had been completed, and copies of the documents delivered to appellees' attorneys, Staggers died.
 
 
 15
 On March 24, 1964, Lady was appointed administrator of Staggers' estate by The Orphan's Court of Prince George's County, Maryland. On July 21, 1964, the Orphan's Court authorized Lady to apply, for substitution, pursuant to Rule 25(a) of the Federal Rules of Civil Procedure. On July 27, 1964, Lady moved for substitution; on the return date of the motion, Lady did not appear and the motion was marked off the calendar "without prejudice to movant to restore on proper notice."
 
 
 16
 On March 9, 1965, appellants moved to restore Lady's motion for substitution to the calendar and asked that Lady be substituted as plaintiff.[1] The motion was denied. We believe that the relief sought should have been granted.[2]
 
 
 17
 The initial question presented is whether there was a final decision from which we can entertain an appeal. 28 U.S.C. § 1291.
 
 
 18
 Judge Metzner, in an order dated February 26, 1965, granted summary judgment for appellees, "unless a motion to amend is made no later than 10 days after the date of entry of this order." Appellants moved to amend within the ten day period. When Judge Metzner, by an order dated May 19, 1965, adhered to this February determination, the parts of appellants' motion which asked that the complaint be amended or that a substitution of plaintiffs be permitted, were still pending. Therefore, the May 19th order could not, in itself, have been final. Technically, Judge Ryan's order of August 16, 1965 was not final because dismissal was contingent on the failure of the appeal taken from the May 19th order of Judge Metzner.
 
 
 19
 However, it seems clear that should we dismiss both of these appeals as not taken from a final decision, the district court would then formally dismiss the complaint and the case would come back before us in precisely its present posture. It is to avoid such time consuming and unnecessarily costly procedures that the Supreme Court has recently held that the "requirement of finality is to be given a `practical rather than a technical construction.'" Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed. 199 (1964); see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We therefore hold that the orders are appealable.
 
 
 20
 On April 27, 1964 appellants' attorney filed an affidavit informing the district court of Staggers' death. The motion to substitute Lady was dated July 27, and served by mail on July 28, 1964. Rule 25(a) (1) of the Federal Rules of Civil Procedure provides:
 
 
 21
 "Substitution of Parties
 
 
 22
 (a) Death.
 
 
 23
 (1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. * * * Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record * * * the action shall be dismissed as to the deceased party. As amended Jan. 21, 1963, eff. July 1, 1963." (Emphasis added.)
 
 
 24
 Appellants' motion under 25(a) (1) was thus two days late.
 
 
 25
 Appellees argue that "Judge Metzner was required to dismiss this action in which no application for substitution was made before the expiration of 90 days." But the history of the 1963 amendment to Rule 25 makes clear that the 90 day period was not intended to act as a bar to otherwise meritorious actions. See 4 Moore, Federal Practice ¶ 25.01-02 (2d ed. 1965 Supp.).
 
 Rule 25(a) (1) originally read:
 
 26
 "If a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties"
 
 
 27
 In 1955, the Advisory Committee on the Federal Rules recommended deletion of the inflexible two year period and the insertion of a "reasonable time" standard. In 1963, the Advisory Committee suggested the present rule and noted:
 
 
 28
 "Present Rule 25(a) (1), together with present Rule 6(b), results in an inflexible requirement that an action be dismissed as to a deceased party if substitution is not carried out within a fixed period measured from the time of the death. The hardships and inequities of this unyielding requirement plainly appear from the cases. * * * The amended rule establishes a time limit for the motion to substitute based not upon the time of the death, but rather upon the time information of the death is provided by means of a suggestion of death upon the record, i. e. service of a statement of the fact of the death."
 
 
 29
 See Notes of Advisory Committee on the Civil Rules, 28 U.S.C. Rule 25 (1964).
 
 
 30
 Rule 6(b) of the Federal Rules of Civil Procedure was also amended in 1963 and the prohibition against extending the time for taking action under Rule 25 was eliminated. The Advisory Committee on the Civil Rules noted: "It is intended that the court shall have discretion to enlarge that period." The amendments of Rules 6(b) and 25(a) (1) provided needed flexibility. It was assumed that discretionary extensions would be liberally granted. Movants under Rule 25 can ordinarily control when a death is "suggested upon the record" and appellants' attorney was under no obligation to file his affidavit of Staggers' death on the date he did. He could have filed it later.
 
 
 31
 Lady's motion for substitution should have been considered timely under Rule 6(b) (2). Lady had to obtain the permission of the Orphan's Court of Prince George's County, Maryland, before applying for substitution; permission was obtained on July 21 and the application served July 28. The real parties in interest are difficult to ascertain even at this date, and numerous, widely dispersed potential claimants had to be consulted before appellants' attorney could ascertain who was to be substituted for Staggers. Of crucial importance is the fact that appellees suffered no prejudice from the two day delay.
 
 
 32
 Appellants' application to amend the complaint to name new plaintiffs, Lady and Kongsung, pursuant to Rule 15 of the Federal Rules of Civil Procedure, should also have been granted. Rule 15(a) may be used to substitute new plaintiffs. See Hackner v. Guaranty Trust Co., 117 F.2d 95 (2d Cir.), cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941) (new plaintiff allowed to come into a case by amendment, although action dismissed as to all original plaintiffs because of lack of jurisdictional amount).
 
 The Supreme Court has recently admonished:
 
 33
 "Rule 15(a) declares that leave to amend `shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be `freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 34
 Here the amendment was proposed approximately a year after Staggers' death. There is no hint of bad faith or indication that appellees were prejudiced by this delay.
 
 
 35
 Rule 15(c) of the Federal Rules of Civil Procedure reads:
 
 
 36
 "Relation Back of Amendments.
 
 
 37
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."
 
 
 38
 No matter who the plaintiffs are, the "transactions" with which we are concerned are those which led to the establishment and breach of the two rice contracts, signed in November 1952, as set forth in the "original pleading." There is no meaningful statute of limitations problem here; the claims of all potential plaintiffs relate back to the date of the original pleading.
 
 
 39
 The documents, exhibits and affidavits submitted to the district court present a confusing picture as to who are the real parties in interest. For example, at various stages of the proceedings, both appellees and appellants have argued that Staggers was not an assignee but merely an "attorney in fact." Appellants presented a document, dated October 22, 1964, in which Kongsung assigned all its rights against appellees to Raritan Chemical Corporation. Our decision is in no way intended to resolve these factual disputes. Appellees may plead the assignment to Raritan Chemical Corporation as a defense against Kongsung. They may challenge the chain of title under which Lady claims as administrator. All of these are issues which can most appropriately be resolved by the trial court. At a trial the judge will be able properly to sift through the numerous documents involved, and can take the testimony of Wooh and others concerned with these transactions.
 
 
 40
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 *
 Of the District Court for Connecticut, sitting by designation
 
 
 [1]
 Throughout these proceedings Mr. Ramey has acted as attorney for all appellants. His motions were intended to protect the interests of Kongsung and Lady as well as those of Staggers and Raritan Chemical Corporation
 
 
 [2]
 Appellants also present several alternative arguments premised upon Staggers being an "attorney in fact," and ending with a request that Raritan Chemical Corporation be substituted as plaintiff for Staggers. As to these arguments we need only note that both Raritan Chemical Corporation and appellee Otto Gerdau Company, Inc. are New York corporations. If Raritan Chemical Corporation were made a plaintiff the complete diversity necessary for this action to continue in federal courts would be lost