Dukens **KERNISANT**, Plaintiff,

v.

The **CITY OF NEW YORK; and in their official capacity as New York City Police Officers and individually—Antonio Velasquez (Shield No. 23058), Vito Marrano and John Does 1–5, Defendants.**

No. 98–CV–7685(ILG).

United States District Court, E.D. New York.

Jan. 19, 2005.

**424**

Nick Brustin, Cochran Neufeld & Scheck LLP, New York City, Richard M. Levy, Rubenstein & Rynecki, Brooklyn, NY, for Plaintiff/Public Administrator of Kings County.

Alan H. Scheiner, Sheryl A. Bruzzese, Assistant Corporation Counsel, New York City, for Defendant City of New York.

John Burns, Worth Longworth Bamundo and London, New York City, for Defendant Antonio Velasquez.

### MEMORANDUM AND ORDER

GLASSER, District Judge.

#### INTRODUCTION

In this civil rights action, plaintiff Dukens Kernisant ("Plaintiff" or "Kernisant") alleges that on December 16, 1997, New York City police officers, including defendant Antonio Velasquez ("Velasquez") (the City of New York and "Velasquez" are referred to collectively as "Defendants"), assaulted him at the Coney Island Department of Motor Vehicles. The amended complaint ("Am.Compl.") alleges causes of action under, *inter alia*, 42 U.S.C. § 1983.

Kernisant was killed on July 13, 2003 in an unrelated automobile accident. Defendants now move to dismiss the amended complaint ("Am.Compl.") pursuant to Fed.R.Civ.P. 25(a) claiming that a proper party was not substituted for Plaintiff within ninety days after Defendants' counsel served a suggestion of Plaintiff's death on his former counsel. Defendants also argue that Plaintiff's counsel did not have "standing" to file two requests for an extension of time in which to file a motion for substitution, and, in any event, these motions are deficient under Fed. R.Civ.P. 6(b). In the alternative, Defendants assert that the amended complaint should be dismissed pursuant to Fed.R.Civ.P. 41(b) because of the delay—more than one year—in the appointment of an administrator for Plaintiff's estate.

Plaintiff's counsel opposes Defendants' motion and argues that he had "standing" to seek extensions of time to file a substitution motion because when these extensions were sought, the surrogate's court had not yet appointed an administrator for Plaintiff's estate to represent it in this case. Moreover, Plaintiff's counsel asserts that the motions for extensions of time were filed promptly and are meritorious. Finally, Plaintiff's counsel states that Defendants' motion lacks merit because on August 5, 2004, the surrogate's court appointed the Public Administrator of Kings County (the "Public Administrator") to continue to represent Plaintiff's interests in this case, and a cross-motion to substitute the Public Administrator as party plaintiff was filed soon thereafter.[1]

For the reasons that follow, Defendants' motion is denied with prejudice.

#### BACKGROUND

For purposes of this motion, the following factual allegations are accepted as true. On

---

1. The cross-motion for substitution was filed by counsel to the Public Administrator, the same counsel who represented Plaintiff until his death.

By agreement of the parties, that cross-motion is not presently before the Court. *See infra.*

December 16, 1997, Plaintiff went to the Coney Island office of the New York State Department of Motor Vehicles, and got into a verbal altercation with Velasquez, an off-duty New York City police officer. (Am. Compl.¶¶ 14, 15). Velasquez, who was the physically stronger, subsequently punched Plaintiff, who was wearing eyeglasses, several times in the face. (*Id.* ¶ 16). When security officers working in the motor vehicles department attempted to separate the two men, Velasquez showed them his New York Police Department ("NYPD") badge and forcefully told the officers that they should not interfere because he was on official police business. (*Id.* ¶ 19). Velasquez pushed Plaintiff to the floor, and when other NYPD officers arrived on the scene, he told them that Plaintiff had assaulted him and that he needed their assistance to arrest Plaintiff. (*Id.* ¶ 21). Velasquez, joined by the responding NYPD officers, handcuffed Plaintiff even though he had difficulty breathing and seeing because his face was bleeding profusely as a result of his physical confrontation with Velasquez. (*Id.* ¶ 22). Plaintiff protested to the NYPD officers that he was the victim and Velasquez the perpetrator of an assault, but to no avail. (*Id.*). Velasquez and other NYPD officers, identified as "John Does 1–5" in the amended complaint, subsequently took Plaintiff to the police precinct where he became faint and collapsed.[2] (*Id.* ¶ 25). It was only then that Plaintiff was provided with medical care, which until then, Velasquez had refused him. (*Id.* ¶ 22). Plaintiff suffered physical injuries as a result of the assault, including a dislodged eyeball which required surgery and caused him permanent disfigurement. (*Id.* ¶ 1).

Following the filing of the complaint and the amended complaint, the parties engaged in a significant amount of discovery, including exchanging documents and information, *see, e.g.,* docket entry number ("DE") 44, 47, and expert reports, *see, e.g.,* DE 64, and taking several depositions, including that of Plaintiff, who was deposed for three days, *see*

DE 47, 64, 70, 83. Court involvement in contentious discovery was frequent. Numerous discovery disputes were ˙resolved by Magistrate Judge Pollak. *See, e.g.,* DE 75, 85 105. Further, Magistrate Judge Pollak issued deposition discovery deadlines which were, on occasion, adjourned. *See, e.g.,* DE 63, 110.

By letter dated July 14, 2003, the parties advised the Court that they intended to submit their fully briefed motion and cross-motion for summary judgment on or before August 11, 2003. (DE 122). Plaintiff's counsel informed the Court, by letter dated July 17, 2003, of Plaintiff's sudden death, on July 13, 2003, as a result of a car accident. (DE 126). Defendants' counsel served a suggestion of death pursuant to Fed.R.Civ.P. 25(a)(1) on Plaintiff's counsel and Velasquez's counsel that same day. (Bruzzese Decl. Exh. C). Because the suggestion of death contained a typographical error indicating that Plaintiff died "on or about" July 31, 2003 and not "on or about" July 13, 2003, Defendants' counsel served an amended suggestion of death with the correct date of death on July 25, 2003. (DE 128).

The parties appeared before Magistrate Judge Pollak on October 10, 2003, at which time Plaintiff's counsel informed the Court that an application was pending in surrogate's court for the appointment of an administrator for Plaintiff's estate. (DE 130). As a result, the Court stayed all remaining discovery. (*Id.*). On October 17, 2003, ninety days after Defendants' counsel served the initial suggestion of death, Plaintiff's counsel filed a motion, pursuant to Fed.R.Civ.P. 6(b)(1), for an extension of time to substitute a representative for Plaintiff under Fed. R.Civ.P. 25(a)(1), because the surrogate's court had not yet appointed an administrator for Plaintiff's estate. (DE 131). Defendants did not oppose the motion, without waiving any objections and without prejudice to opposing any further similar motions that Plaintiff's counsel might file. The Court did not rule on this motion.[3] On January 16, 2004, Plaintiff filed a second motion, pursuant to Fed.R.Civ.P. 6(b)(1), for a further

---

**2.** Sergeant Vito Marrano of the NYPD, a named defendant, was dismissed from this case pursuant to a stipulation and order which the Court entered on April 23, 2003. *See* DE 109.

**3.** The motion was never submitted for decision to the undersigned.

extension of time to substitute a representative for Plaintiff under Fed.R.Civ.P. 25(a)(1), an application for the appointment of which having been made within 90 days after the suggestion of death. (DE 131, 132). Both motions were filed by deceased Plaintiff's former counsel. (*Id.*)

On January 20, 2004, the parties appeared by telephone before Magistrate Judge Pollak, at which time the Court learned that the application for appointment of an administrator was still pending in surrogate's court. (DE 133). At that time, Defendants' counsel informed the Court that they intended to oppose Plaintiff's second application for an extension of time to file a substitution motion under Fed.R.Civ.P. 25(a)(1). (*Id.*)

During a telephone conference on April 13, 2004, Magistrate Judge Pollak issued a stay on the briefing relating to the pending motions for extensions of time until the next conference scheduled for June 8, 2004. (DE 140). At the June 8, 2004 conference, the Court granted Defendants permission to file this motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 25(a)(1) on the grounds previously stated. (DE 141).

The Public Administrator was appointed as the legal representative of Plaintiff's estate for purposes of this lawsuit on August 5, 2004. (Brustin Decl. ¶ 5 & Exh. 1). The Public Administrator has engaged the same counsel who represented Plaintiff to represent him in this case. (*Id.* ¶ 7). Plaintiff's counsel, as counsel to the Public Administrator, cross-moved to substitute the Public Administrator in place of Plaintiff twenty-two days later on August 27, 2004, when they filed opposition papers to the motion to dismiss. By letter application dated September 1, 2004, which the Court granted, Defendants' counsel asked that the cross-motion to substitute the Public Administrator for Plaintiff be stayed pending a decision on Defendants' motion to dismiss the amended complaint and Plaintiff's service of the cross-motion on Francine Jackson, the mother of one of Plaintiff's infant children. (DE 144).

4. Although several courts have held that a suggestion of death, such as the one that Defendants' counsel served, which fails to identify the representative of the deceased's estate or the deceased's successor, is invalid, the Second Circuit has not read such a requirement into Fed.

## DISCUSSION

### I. Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R.Civ.P. 25(a)(1)

Defendants contend that the Court should dismiss the amended complaint because no representative of Plaintiff has moved to be substituted as the party plaintiff within ninety days of service of the suggestion of death, that Plaintiff's counsel's motions for extensions of time to file a substitution motion are deficient because they were not made by a "proper party" under Rule 25, and, in any event, Plaintiff's counsel failed to satisfy the standard under Fed.R.Civ.P. 6(b) for the grant of an extension of time to file a motion for substitution. Each of these arguments is addressed in turn.

### A. The Failure To File a Motion for Substitution Under Fed.R.Civ.P. 25 Within Ninety Days Following Service of the Suggestion of Death

Fed.R.Civ.P. 25(a)(1) provides as follows:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

■ Here, it is undisputed that a motion for substitution was not filed within ninety days from the date on which Defendants' counsel served a suggestion of Plaintiff's death.[4] Contrary to Defendants' arguments,

R.Civ.P. 25. *See Unicorn Tales, Inc. v. Banerjee,* 138 F.3d 467, 470 (2d Cir.1998) (noting that Rule 25 "merely requires that the statement of death be served on the involved parties"). Therefore, the Court rejects Plaintiff's counsel's argument that Defendants' motion to dismiss

*see, e.g.,* Defs. Mem. at 4–6, this fact alone does not automatically mandate dismissal of the action as to the deceased party, despite Rule 25's "use of the word 'shall,' where the motion is made after the prescribed period." *Billino v. Citibank, N.A.,* 1996 WL 1088925, at \*1 (E.D.N.Y. Sept. 10, 1996) (citing C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1955 (2d ed.1986)), *appeal denied by,* 123 F.3d 723 (2d Cir.1997). The Court is authorized to extend the time in which to file a motion for substitution before or after the expiration of the ninety-day period pursuant to Fed.R.Civ.P. 6(b).[5] C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1955, at 546 (2d ed.1986).

### B. Whether Plaintiff's Counsel Had "Standing" To File a Motion For Extension of Time Under Fed. R.Civ.P. 6(b)

Defendants next argue that Plaintiff's attorneys did not have "standing" to file the motions for extension of time because at the time they made such motions, they were not representing Plaintiff's estate. (Defs. Mem. at 7–8). Defendants' argument is premised on the principle that "a lawyer who represented a party before that party's death is not a 'representative' within the meaning of Rule 25." *Roe v. City of New York,* 2003 WL 22715832, at \*2 (S.D.N.Y. Nov. 19, 2003) (citing and quoting *Coverdale v. Apel,* 1999 U.S. Dist. LEXIS 9549, at \*2 (S.D.N.Y. June 22, 1999)).

The Court finds Defendants' argument unpersuasive. It is not supported by the text of Fed.R.Civ.P. 6(b), quoted below, or any case law. The cases which Defendants cite in support of their position are inapposite to the facts here. (Defs. Mem. at 7). They hold only that a deceased's attorney is not authorized to file a motion for substitution under Rule 25 unless that attorney has been hired by the administrator of the deceased's estate, but they do not address the question

whether the deceased's attorney may file a motion for extension of time under Rule 6 when an administrator for the deceased's estate has not been named within 90 days of service of the suggestion of death. For example, in *Coverdale,* the plaintiff, "seeking review of a final decision of the Commissioner of Social Security," died during the pendency of the litigation, after which the plaintiff's counsel sought to substitute plaintiff's relative pursuant to Fed.R.Civ.P. 25. *Coverdale,* 1999 U.S. Dist. LEXIS 9549, at \*1. The defendant moved to dismiss the complaint on the ground that the plaintiff's lawyer had been unsuccessful in locating the plaintiff's relative who would replace the deceased plaintiff within 90 days. *Id.* In granting the defendant's motion to dismiss, the court noted that it was unopposed, and more importantly, relied on the fact that a representative of the plaintiff's estate did not authorize the substitution motion "within the meaning of Rule 25." *Id.* at \*2. Therefore, *Coverdale* did not address the issue whether the counsel who represented the deceased party has "standing" to file a motion for enlargement of time to file a motion for substitution. *See also Roe,* 2003 WL 22715832, at \* 2 (noting that Plaintiffs were granted an extension to file a motion for substitution and court approved deceased's father as party plaintiff); *Morales v. CT Holdings, Inc.,* 2001 WL 1204011, at \*1 (S.D.N.Y. Oct. 10, 2001) ("Only a party to an action or the successors or representatives of a deceased party may make a motion for substitution when a party to an action dies"); *Gayle v. New York State Div. of Parole,* 1997 WL 53156, at \*1 (S.D.N.Y. Feb. 10, 1997) ("Even a licensed attorney representing a plaintiff before the plaintiff's death, can not continue an action on behalf of such decedent unless requested to do so by the representative of the estate appointed under state law").

---

should be denied because the suggestion of death was improper. *See* Pl. Opp. Mem. at 6.

**5.** All parties agree that under New York law, a claim arising under, for example, 42 U.S.C. § 1983, based on the alleged violation of Plaintiff's civil rights, survives Plaintiff's death and may be asserted or continued by the deceased Plaintiff's personal representative. *See, e.g., Bar-*

*rett v. United States,* 689 F.2d 324, 331 (2d Cir. 1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *see also* N.Y. Est. Powers & Trusts Law § 11–3.2 ("No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent").

*Kasting v. American Family Mutual Ins. Co.,* 196 F.R.D. 595 (D.Kan.2000), which Defendants cite as persuasive authority, is no different. In *Kasting,* 196 F.R.D. at 596, the plaintiff died on June 6, 1997, a suggestion of death was served on the plaintiff's counsel on June 11, 1997, and the plaintiff's counsel filed a motion to substitute plaintiff's widow as party plaintiff on November 4, 1997, well after the ninety day period prescribed by Rule 25. The magistrate judge granted the motion filed by the plaintiff's counsel before defendant's time to oppose it had expired, and even though the surrogate's court had not yet appointed an administrator for the plaintiff's estate. *Id.* at 597. The defendant filed an objection to the magistrate judge's order which the district court sustained. *Id.* Subsequently, on January 8, 1998, the surrogate's court appointed the plaintiff's widow as "administratrix" of the plaintiff's estate. *Id.* The next day, the plaintiff's counsel filed a renewed motion for substitution of parties, and only in his reply papers did he ask the court for an enlargement of time under Fed. R.Civ.P. 6. *Id.* The plaintiff's counsel did not sign the motion for substitution as counsel to the plaintiff's widow, the party who was authorized to represent the plaintiff's estate in the litigation, but rather as "Attorney for plaintiff," a reference to the deceased party. *Id.*

The court denied the renewed motion filed by the deceased plaintiff's attorney. In so doing, the court acknowledged the rule recited above which states that a motion for substitution cannot be filed by the deceased's attorney unless he (or she) is the "representative of the deceased party of the sort contemplated by the rule." *Kasting,* 196 F.R.D. at 598 (the plaintiff's counsel "at the time he made the motion to substitute, was neither a party, nor a successor or representative of the deceased party, nor did he act on behalf of anyone other than the deceased plaintiff"). Against this background, the court denied the renewed motion for enlargement of time to file the motion for substitution for two reasons. First and foremost, the "request for an extension was not made by motion as is required by the rules of civil procedure ... but solely in a reply brief." *Id.* Second, because at the time the plaintiff's counsel filed the renewed motion, a representative of the plaintiff's estate had been appointed, and the papers did not indicate that counsel was representing the party who sought to be named as the party plaintiff. *Id.*

Thus, to the extent that *Kasting* held *in dicta* that the plaintiff's counsel lacked "standing" to assert the motion for enlargement of time to submit the substitution motion, it was premised on the fact that at the time the enlargement motion was filed, a representative of the plaintiff's estate had already been appointed. This stands in stark contrast to the facts presented here, where at the time that Plaintiff's counsel filed the two motions for extension of time (in October 2003 and January 2004), the surrogate's court had not yet appointed anyone as administrator of Plaintiff's estate for purposes of this case.

■ Other observations in *Kasting* which bear upon the disposition of these motions which warrant recognition are: "Whether an action should be dismissed for failure to comply with the 90 day time limit lies within the sound discretion of the district court. *See* Fed.R.Civ.P. 25(a)(1) Advisory Committee's Note (1964); *see also Staggers v. Otto Gerdau Co.,* 359 F.2d 292, 296 (2d Cir.1966) ('It is [also] intended that the court shall have discretion to enlarge [or not enlarge] th[e substitution] period.'). In making this determination the Court is mindful of the underlying purpose of Rule 25(a)(1) which is to allow flexibility in substitution. To effectuate this purpose, the rule should be liberally interpreted." *Kasting,* 196 F.R.D. at 601 (citing *Rende v. Kay,* 415 F.2d 983, 986 (D.C.Cir. 1969)). Exquisitely applicable here is the further observation that *"difficulty in appointing an administrator could warrant an extension* of time under Rule 6(b) where there is a prompt application for such an appointment." *Id.* at 602 (emphasis added) (citing *Yonofsky v. Wernick,* 362 F.Supp. 1005, 1013 (S.D.N.Y.1973)).

In their reply memorandum, Defendants also argue that *Unicorn Tales, supra,* 138 F.3d 467, is "strikingly akin" to this case. (Defs. Rep. Mem. at 5). However, the Second Circuit in *Unicorn Tales* addressed the argument that the "district court should have granted the motion to substitute ... out of time, pursuant to Rule 6(b)," and rejected it

because "there was no motion for the district court to allow substitution out of time under Rule 6(b)." 138 F.3d at 470. The Court found that the motion made before the district court was one filed under Rule 25, and therefore since the party below did not make a motion under Fed.R.Civ.P. 6(b), it was deemed waived. *Id.* Here, Defendants have not argued that Plaintiff's attorneys waived their right to file a motion under Fed. R.Civ.P. 6(b). To the contrary, Plaintiff's counsel filed two motions for extension of time pursuant to Rule 6(b) in October 2003 and January 2004, respectively. Moreover, even a casual reading of *Unicorn Tales* would reveal that Defendants' reliance upon it is misplaced. The Court there wrote: "Plainly, then, if there was an inability or a significant difficulty in identifying Banerjee's legal representative or successor, a motion could be brought under Rule 6(b) to enlarge the time in which to file the motion for substitution." 138 F.3d at 470.

■ Further, Defendants have not cited a case, and the Court's research has not uncovered one, which holds that an attorney for a deceased party *does not have* "standing" to file a motion for enlargement of time under Fed.R.Civ.P. 6(b) where, as here, the surrogate's court has not appointed an administrator for a deceased party's estate within 90 days of service of the suggestion of death although an application for the appointment of one was made within the requisite period.[6] To the extent that decisions exist which address this issue, they hold that the Plaintiff's counsel had "standing" to do what they did in this case. For example, in *Jones Inlet Marina, Inc. v. Inglima*, 204 F.R.D. 238, 239 (E.D.N.Y.2001) (hereinafter *"Inglima"*), an individual defendant named Troscher died, and his attorney, Hechler, asked the court to stay the "initial discovery order . . . until an administrator is appointed to Mr. Troscher's estate." Hechler's application was filed before the 90th day after service of the suggestion of death. *Inglima*, 204 F.R.D. at 240. The court granted Hechler's application. *Id.* In passing, the court noted that "[i]f there is an inability or significant difficulty in identifying Troscher's legal representative or successor, a motion may be brought under Rule 6(b) to enlarge the time in which to file the motion for substitution beyond the 93 day time period."[7] *Id.* This motion would have to be brought by Hechler, Troscher's former attorney, where no legal representative or successor for the plaintiff's estate is identified at the time of the making of the motion.

Likewise, in *Tatterson v. Koppers Co.*, 104 F.R.D. 19, 20 (W.D.Pa.1984), the plaintiff died on January 19, 1984, a suggestion of death followed five days later, and "[a]pproximately six months later," the defendants filed a motion to dismiss under Rule 25. In opposition, counsel who had represented the deceased filed a cross-motion for enlargement of time to file a motion for substitution "pending the appointment of an executor of [the] plaintiff's estate." *Id.* The court denied the defendants' motion to dismiss and granted the plaintiff's cross-motion for enlargement of time under Fed.R.Civ.P. 6(b), and reasoned as follows, which bears directly on this case: "Plaintiff's counsel states that he could not move for substitution within the time period" under Rule 25 "because of delays in the appointment of" the "executor of Plaintiff's estate. Although it would have been preferable if Plaintiff's counsel had moved for an enlargement of time during the 90 day period, this Court finds no bad faith in his failure to do so." *Id.* at 20–21.

Unlike counsel for the deceased party in *Tatterson*, who waited much longer than 90

---

6. "Pursuant to Rule 25(a)(1)[,] a proper party for substitution is either (1) a successor of the deceased party—a distributee of an estate if the estate of the deceased has been distributed at the time the motion for substitution has been made . . . or (2) a representative of the deceased party—a person lawfully designated by state authority to represent the deceased's estate." *Billups v. West*, 1998 WL 341939, at *1 (S.D.N.Y. June 26, 1998) (citations and internal quotations omitted).

7. The court indicated that the motion for substitution had to be filed within 93, and not 90, days of service of the suggestion of death because it was served by mail. *Inglima*, 204 F.R.D. at 240 (citing *Pastorello v. City of New York*, 2000 WL 1538518, at *2 (S.D.N.Y. Oct. 18, 2000) (adding three additional days for service by mail under Rule 6(e) to the 90 day period)). In this case, Defendants' counsel also served the suggestion of death by mail, and thus a motion for substitution (or enlargement of time to file such motion) needed to be filed 93 days from the date of service of the suggestion of death.

days to file the motion for enlargement of time after service of the suggestion of death, Plaintiff's counsel in this case filed the initial motion for extension of time within the 90 day period set forth in Fed.R.Civ.P. 25. In addition, as in *Tatterson*, the facts in this case reveal that following Plaintiff's death, there were extensive delays in the appointment of a representative for the decedent's estate as explained in the affidavit of Richard M. Levy ("Levy Aff.") due to, among other things, Plaintiff having two out-of-wedlock infant children born within a year of his death.[8] (Levy Aff. ¶ 4). Notwithstanding the delay, the record is clear that counsel for the decedent "made every possible effort throughout to complete the" process for the "appointment of an [a]dministrator in the most expeditious manner," pursuing it almost immediately after Plaintiff's death. (*Id.* ¶ 2). Plaintiff's counsel was unaware that the Public Administrator of Kings County might be appointed as the representative of Plaintiff's estate until February 2004, well after he filed the motions for extensions of time.[9] (*Id.* ¶ 10).

Curiously, Defendants argue that "as early as February of 2004, [Plaintiff's counsel] could have appeared as *counsel* for the Public Administrator (or perhaps for the putative heirs to the estate) and made a Rule 6(b)(2) motion or the Public Administrator could have done so itself." (Defs. Rep. Mem. at 3).

Defendants are wrong and their argument misunderstands the state of the proceedings in the surrogate's court as of February 2004. While certain lawyers, including counsel for the decedent (and the Public Administrator) believed that the Public Administrator was the proper entity to receive "limited Letters of Administration for purposes of administering this case," *see* Rosenthal Aff. ¶ 3, the surrogate's court did not appoint the Public Administrator as administrator for Plaintiff's estate for purposes of this case until August 5, 2004, and thus any application before then for an extension of time under Fed.R.Civ.P. 6(b) by or on behalf of the Public Administrator would have been premature.[10]

Defendants' argument, if accepted by the Court, would necessarily result in a blanket rule being imposed which would require dismissal of the claims of a deceased party simply because the process of appointing an administrator for the deceased's estate was delayed for a significant amount of time. This is plainly not contemplated by either Rule 6 or Rule 25 of the Federal Rules of Civil Procedure. It would also seriously frustrate the purpose and objective of N.Y. Est. Powers & Trusts Law § 11–3.2.

■ The Court therefore decides that the deceased Plaintiff's counsel had "standing" to file the motions for extensions of time pending the appointment of an administrator for Plaintiff's estate.[11]

---

8. The Levy affidavit is attached behind tab 1 to the Brustin declaration submitted in opposition to Defendants' motion to dismiss the amended complaint. In that affidavit, Levy explains that in seeking an appointment of an administrator for Plaintiff's estate, counsel was required "to secure a Voluntary Administrator in order to recover property that was impounded" solely for this purpose, a process that was not completed until November 2003. (Levy Aff. ¶ 3). Although counsel attempted to appoint Plaintiff's father as administrator of the entire estate, this application was contested and denied. (*Id.* ¶ 6). After counsel obtained the documents necessary to file a petition for letters of administration, the surrogate's court indicated that guardians would be appointed to safeguard the interests of Plaintiff's infant children, who would benefit from any recovery in this case. (*Id.* ¶ 7). This process was time-consuming and document intensive. (*Id.*). Finally, "in order to have a guardian appointed," counsel "had to file papers to revoke the Voluntary Administrator appointment of" Plaintiff's father, causing further delay. (*Id.* ¶ 9).

9. Counsel to the Public Administrator, Louis R. Rosenthal, submitted an affidavit confirming the testimony in the Levy Affidavit, including the fact that in late February, 2004, he informed Plaintiff's counsel "that the Public Administrator was the proper entity to be granted Limited Letters of Administration for the purposes of administering this case." Affidavit of Louis R. Rosenthal ("Rosenthal Aff.") ¶ 3, submitted behind tab 2 to the Brustin Declaration.

10. As of February 2004, and through August 4, 2004, the surrogate's court did not appoint anyone to represent Plaintiff's estate in this case.

11. If the Court accepted Defendants' argument it also would have resulted in a stay of all activity in this case, including the filing of the Rule 6(b) motions, between Plaintiff's death and the appointment of the Public Administrator a little more than one year later. *See Matter of Estate of Garfinkle*, 119 A.D.2d 911, 912, 500 N.Y.S.2d 863, 865 (3d Dep't 1986) (before a motion to substitute may be granted, a representative of the

## C. The Motions for Enlargement of Time Satisfied Fed.R.Civ.P. 6(b)

█ Next, Defendants argue that Plaintiff's counsel failed to satisfy the standard for obtaining an extension of time under Fed. R.Civ.P. 6(b). In deciding whether to grant a Rule 6(b) motion in connection with the death of a party, the Second Circuit has held that the trial court should be mindful of the underlying purpose of Rule 25(a)(1) which is to allow flexibility in substitution.[12] *Unicorn Tales,* 138 F.3d at 469.

Rule 6(b) states:

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. . . .

█ Federal Rule of Civil Procedure 6(b) is a rule of general application giving discretion to the trial court to enlarge time limits either before or after they have expired. *Wesolek v. Canadair Limited,* 838 F.2d 55, 58 (2d Cir.1988) ("The granting or denial of a motion to extend the time . . . lies within the discretion of the district court"). Because this Court may exercise its discretion under Rule 6(b)(1) only for "cause shown," a party must demonstrate some justification for the issuance of the enlargement order. *Davidson v. Keenan,* 740 F.2d 129, 132 (2d Cir.1984) ("Had appellants applied to the court within that prescribed period for an

extension of time to respond, the court in its discretion would have been free to grant such an extension 'for cause shown' pursuant to Fed.R.Civ.P. 6(b)(1)"). "However, an application for the enlargement of time under Rule 6(b)(1) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1165 (2d ed.1986); *cf. Billino,* 1996 WL 1088925, at *1 (where the motion for substitution is not filed until after the expiration of the ninety day period, it can be granted where the failure to act earlier was the result of "excusable neglect"); *Tenenbaum v. Williams,* 907 F.Supp. 606, 612 & n. 6 (E.D.N.Y.1995) ("the Court notes that although the combination of newly-announced trial schedules and an unexpected death in the immediate family of one of the defense attorneys . . . surely could have served as a basis for an extension request pursuant to Rule 6(b)(1), defense counsel simply chose not to make such a request"), *aff'd in part, vacated in part,* 193 F.3d 581 (2d Cir.1999).

█ The Court initially holds that the applicable provision governing the motions for extension of time is Fed.R.Civ.P. 6(b)(1) and not Fed.R.Civ.P. 6(b)(2) as Defendants would have it. Pursuant to the plain language of Fed.R.Civ.P. 6(b)(1), Plaintiff's counsel filed the request for an extension of time "before the expiration of the period originally prescribed." Specifically, Defendants' counsel served the suggestion of death on July 17, 2003 by mail, and Plaintiff's counsel served the Rule 6(b) motion for an extension of time on October 14, 2003, within the 90 day window prescribed under Fed.R.Civ.P. 25, which includes an additional three days because Defendants served the suggestion of death by mail.[13] *See infra* n. 7.

---

deceased's estate must be named as the proper party for substitution) (citing *Matter of Estate of Smith,* 49 Misc.2d 897, 897, 268 N.Y.S.2d 773, 774 (N.Y.Sur.1966)).

**12.** Before the 1963 amendment to Fed.R.Civ.P. 25, a court was required to dismiss a case if no motion for substitution was filed within two years after the date of death regardless of notice, or lack thereof, to any representatives or successors of the deceased party. *Unicorn Tales,* 138 F.3d at 469 (citing Advisory Committee Notes to Fed.R.Civ.P. 25(a)). No extensions of this two-year period were allowed. The application of

this rule produced often harsh consequences and the amendment was designed to avoid them. *Staggers,* 359 F.2d at 296.

**13.** The Court rejects Defendants' argument that Plaintiff's counsel's second motion for an extension of time served on January 16, 2004 "was defective under Local Rule 7.1, which requires a [m]emorandum of [l]aw in support of any motion barring prior permission of the Court" because a party seeking relief under Fed.R.Civ.P. 6(b)(1) is not required to give notice or file a motion in support thereof. *See* Defs. Mem. at n. 4; Fed. R.Civ.P. 6(b)(1) ("the court for cause shown may

■ The Court concludes that Plaintiff's counsel satisfied the Rule 6(b)(1) standard for obtaining an extension of time. First, there is no evidence that Plaintiff's counsel acted in bad faith in seeking the extension to file the Rule 25 motion. To the contrary, almost immediately after learning about Plaintiff's death, counsel "made every possible effort ... to complete the appointment of an Administrator in the most expeditious manner." [14] (Levy Aff. ¶ 2). The process took a little more than one year because the surrogate's court was required to appoint guardians for Plaintiff's infant children who are the beneficiaries of any judgment (or settlement proceeds) that the Public Administrator obtains in this case, and the putative appointment of Plaintiff's father as administrator of the entire estate was contested and failed. [15] This is in addition to the difficult and time consuming process that appointment of an administrator entails in virtually every case. [16] (*Id.* ¶¶ 3, 4, 6–8).

Second, the Court finds that Defendants suffered little or no prejudice as a result of the unavoidable delay in obtaining the appointment of an administrator. Although Defendants argue that they are prejudiced because the delays in this case have caused witnesses to become unavailable for deposition and trial and to lose their memories, this is more a consequence of the fact that the case has been on the Court's docket since 1998 and the parties, including Defendants, have not proceeded expeditiously with discovery. [17] Moreover, to the extent that delay in this case due to Plaintiff's death has caused prejudice, it is prejudice felt by all parties equally.

## II. Defendants' Motion to Dismiss the Amended Complaint Pursuant to Fed. R.Civ.P. 41

■ Defendants have moved pursuant to Fed.R.Civ.P. 41 to dismiss this case due to Plaintiff's failure to prosecute. *See* Fed. R.Civ.P. 41(b). In deciding a motion to dis-

at any time in its discretion ... *with or without motion or notice* order the period enlarged") (emphasis added).

**14.** Defendants' counsel state that "former plaintiff's counsel have never identified the parties to the Surrogate's court proceeding, provided the caption, parties and index number of the case, provided dates or copies of the filings." (Defs. Mem. at 9). However, Defendants' counsel have failed to indicate how such information would have been relevant to this motion if they had received it, and whether they even asked for it. In this respect, the Court notes that Plaintiff's counsel informed the Magistrate Judge (and Defendants' counsel) of the status of the appointment process at court conferences held following Plaintiff's death. (DE 140, 141). Defendants' argument is therefore misplaced and disingenuous.

**15.** The fact that the mothers of Plaintiff's infant children, who have no legal interest in this case, were uncooperative, *see* Defs. Mem. at 9–10, has no bearing on whether Plaintiff's counsel proceeded in good faith in their effort to secure the appointment of an administrator for Plaintiff's estate and their filing of the motions for extension of time. *See generally George v. United States,* 208 F.R.D. 29, 33 (D.Conn.2001) (granting Rule 6(b)(2) motion for extension of time to file substitution motion where the "delay was not due to inaction on the part of plaintiff's counsel, but instead, on the loss or misplacement of documents necessary to complete the appointment of" the executor and plaintiff's counsel submitted the

motion for extension of time and for substitution four days later). The conduct of the mothers of Plaintiff's infants, who are not Plaintiff's heirs, is contrasted by the uncooperative conduct of a deceased's heirs, which courts have held can contribute to a finding that a party's request for extension of time under the excusable neglect standard is deficient pursuant to Fed.R.Civ.P. 6(b)(2). *See Zeidman v. General Accident Ins. Co.,* 122 F.R.D. 160, 162 (S.D.N.Y.1988).

**16.** Courts have held that difficulty in appointing an administrator warrants an extension of time under Fed.R.Civ.P. 6(b)(2) where there was a prompt application for such an appointment under Fed.R.Civ.P. 25. *See, e.g., Yonofsky,* 362 F.Supp. at 1013; *Staggers,* 359 F.2d at 296 ("excusable neglect" shown for failure to file motion for substitution in a timely fashion where widely dispersed potential claimants had to be consulted before the decedent's attorney could ascertain who was to be substituted for the deceased). Therefore, since a party satisfies the "excusable neglect" standard for an extension of time where delay occurs in the appointment of an administrator, *a fortiori,* the lesser standard under Fed. R.Civ.P. 6(b)(1) is satisfied on the same facts presented here.

**17.** At oral argument, deceased Plaintiff's former counsel asserted that the witnesses to the event giving rise to this case were known to Defendants at or about the time it occurred, but no significant effort was made to depose them. Defendants' counsel did not contest that assertion.

miss under Rule 41, "[i]t is well established that a district court has the power to dismiss an action for failure to prosecute and that such a dismissal will be reviewed only for abuse of discretion." *Nita v. Connecticut Dep't of Environmental Protection*, 16 F.3d 482, 485 (2d Cir.1994) (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632–33, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). "[D]ismissal is a harsh remedy to be utilized only in extreme situations." *Romandette v. Weetabix Co.*, 807 F.2d 309, 312 (2d Cir.1986) (quotation and internal citation omitted). Under Rule 41, five factors are considered to determine whether dismissal is warranted: (1) the duration of the Plaintiff's failures; (2) whether Plaintiff had received notice that further delays would result in dismissal; (3) whether the Defendants are likely to be prejudiced by further delay; (4) whether the district court has taken care to strike the balance between alleviating court congestion and protecting a party's right to due process and a fair chance to be heard; and (5) whether the district court has adequately assessed the efficacy of lesser sanctions. *United States v. Norden Systems, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

An examination of these factors compels the Court to deny Defendants' motion to dismiss. First, as set forth above, Plaintiff's counsel acted quickly and effectively in their efforts to gain the appointment of an administrator to represent Plaintiff's estate in this litigation. This resulted in the appointment of the Public Administrator as administrator for Plaintiff's estate in this case on August 5, 2004, and Plaintiff's counsel, as counsel to the Public Administrator, filed its cross-motion for substitution promptly thereafter.

Second, until Defendants sought permission to file this motion, Plaintiff's counsel was not aware that dismissal of the lawsuit could result because of the delay in appointing an administrator. Significant also is the fact that Plaintiff's heirs and representatives could not control the speed with which the surrogate's court acted. That individuals such as the Public Administrator and Plaintiff's father were on notice that they may be appointed an administrator of Plaintiff's estate for the purpose of prosecuting this case did not bestow upon them the right to appear as a representative for Plaintiff until the surrogate court issued an order to that effect. (Defs. Mem. at 12). As discussed previously, after the Public Administrator was appointed as administrator for Plaintiff's estate to continue this lawsuit, a cross-motion for substitution was filed almost immediately thereafter.

Third, as noted above, the fact that this case was already almost six years old when Plaintiff died, and discovery was still outstanding, has as much to do with Defendants' conduct as with Plaintiff's. To the extent that Defendants are prejudiced by the one-year delay in discovery, moreover, it is not a result of Plaintiff's actions (or those of his representatives), but is due to the time consuming process of appointing an administrator in surrogate's court. Further, the remaining discovery to be taken involves witnesses for all parties (and not only Defendants), and thus the prejudice from the delay is felt equally by all. It is also worth noting that in light of the appointment of the Public Administrator to represent Plaintiff's estate in this case as of August 5, 2004, no further delays should ensue.

Fourth, in light of the good faith effort of Plaintiff's counsel in attempting to secure the appointment of an administrator as quickly as possible, the Court's decision to grant Defendants' motion, and prevent Plaintiff and his heirs from having their day in court, would be based entirely on the proceedings in the surrogate's court, and not the actions of Plaintiff, his heirs or the attorneys for Plaintiff's representative. To grant Defendants' motion would be to punish a party who bears no blame for the delay.

Finally, the fifth factor, whether lesser sanctions are appropriate, is not relevant to the Court's determination because no other sanction is sought or should be imposed here because Plaintiff, his heirs and his representatives bear no responsibility for the delay.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the amended complaint is denied. Plaintiff's counsel is directed to serve and file an affidavit of service of the cross-motion to substitute the Public Administrator of Kings County as the party plain-

tiff on Francine Jackson, the mother of one of Plaintiff's children, within five business days following receipt of this memorandum and order. Upon receipt of said affidavit of service, Defendants' counsel shall immediately contact the Court to advise whether, in light of this Memorandum and Order, they will oppose Plaintiff's cross-motion for substitution. If Defendants oppose the motion, the Court shall issue a briefing schedule for the motion at that time. Otherwise, Plaintiff's cross-motion shall be deemed granted.

SO ORDERED.