**Lynda PEART, Appellant,**

v.

**CITY OF NEW YORK, New York City Police Department, Raymond Kelly, David Dinkins, Appellees.**

**No. 1258, Docket 92–9189.**

United States Court of Appeals, Second Circuit.

Argued March 23, 1993.

Decided May 3, 1993.

Rosemary Carroll, New York City (Kliegerman & Friess, on the brief), for appellant.

Anthony M. Dillof, New York City (O. Peter Sherwood, Corp. Counsel of the City of New York, and Stephen J. McGrath, on the brief), for appellees.

Before: MESKILL, Chief Judge, TIMBERS and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Lynda Peart appeals from a judgment entered in the Southern District of New York, Samuel Conti, *District Judge*, of the Northern District of California, sitting by designation, which dismissed her action with prejudice pursuant to Fed.R.Civ.P. 41(b) and imposed monetary sanctions in the amount of $36,483 on her counsel for refusal to comply with an order of the court and for failure to prosecute the action.

On appeal, appellant claims that the court abused its discretion in dismissing the action and in imposing monetary sanctions against her attorney.

For the reasons that follow, we reject appellant's claims and we affirm the judgment in all respects.

I.

■ We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Peart, a former New York City police officer, was dismissed from the police force on January 13, 1987 after an investigation revealed that she had lied about the circumstances surrounding her firing of her service revolver while off duty. On July 10, 1987, appellant commenced an action in the Southern District of New York against appellees alleging that she was fired because of her alcoholism and because of her sex, in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–795i (1982), 42 U.S.C. §§ 1981 and 1983 (1982), the Fourteenth Amendment, and various state laws. The case was assigned to Judge Haight.

Discovery continued for three years during which both parties sought and received extensions of time. On May 25, 1990, Judge Haight entered a Scheduling Order For Pre-Trial Memoranda directing the parties to file a joint pre-trial memorandum by June 29, 1990. Since the parties encountered problems agreeing to a joint stipulation of facts and issues of law presented, the deadline was extended to July 27, 1990. Appellant's counsel, Rosemary Carroll, sent two drafts of a memorandum to appellees' counsel on May 23, 1990. In an attempt to resolve their objections to Carroll's draft memorandum, appellees' counsel left several phone messages for Carroll and sent her numerous letters. Carroll did not respond to any of the phone calls or letters. Appellees' counsel also sent their proposed draft of the joint

memorandum to Carroll, but she said she was unavailable to discuss any substantive issues with them.

On July 26, 1990, Carroll sent a pre-trial memorandum to the court in which she deleted eight witnesses that appellees' counsel had included in their proposed draft and added a due process claim not asserted in the complaint. This memorandum was entitled "Joint Pre–Trial Memorandum" despite the fact that it had not been reviewed or signed by appellees' counsel. In response, appellees' counsel wrote a letter to the court explaining the problems they were having with Carroll in an attempt to agree upon a joint memorandum and requesting a conference to resolve these difficulties. At a conference held on October 2, 1990, the court adopted appellees' proposed witness list, which added the eight witnesses excluded by appellant. Later, in a Memorandum Opinion and Order dated September 27, 1991, the court dismissed appellant's due process claim and allowed each party to file their own pre-trial memoranda. The court added the case to the Ready Calendar which indicated to the parties that they must be ready to begin the trial on 48 hours' notice.

In May 1992, Judge Samuel Conti of the Northern District of California, having been designated to sit in the Southern District of New York, was assigned four of Judge Haight's cases for trial. Among the cases assigned to him was appellant's action. In early June 1992, Judge Haight's chambers notified Carroll and appellees' counsel that Judge Conti would preside over the case sometime during his visit to the Southern District from August 31 to October 16, 1992. Carroll claimed that she did not receive any notice from Judge Haight's chambers regarding the assignment of the case to Judge Conti. This was but one of many claims by Carroll of non-receipt of court notices.

In August 1992, Judge Conti sent Carroll and appellees' counsel a Court Trial Preparation Instruction directing them to file with the court certain pre-trial materials seven days prior to trial. Carroll claimed that, since she did not know that Judge Conti was going to try the action and since the instructions bore no case name or docket number, she thought the instructions had been sent to the wrong person.

On August 19, 1992, Judge Conti's law clerk phoned Carroll's office to find out how long Carroll estimated her case would last and to explain the contents of the pre-trial order. Since Carroll was on vacation, an employee in her office assured the clerk that Carroll would get the message and supply the information he requested. Judge Conti's law clerk also informed Carroll's office around this time that the trial was scheduled to begin on September 21, 1992; once again, Carroll denied receiving this notice.

On September 2, 1992, Judge Conti's law clerk called Carroll to reconfirm the trial date of September 21. Since Carroll was still on vacation, an employee in her office informed the clerk that Carroll intended to be on trial in the New York State Supreme Court that day and thus would be unable to try the instant case at that time. This was the first time that Judge Conti was informed of Carroll's asserted unavailability. When Carroll returned from vacation on September 9, 1992, she submitted a letter to Judge Conti explaining why she claimed to be unavailable. Judge Conti responded the same day, informing Carroll that the trial in the United States District Court remained scheduled for September 21. On September 11, Carroll wrote another letter to Judge Conti restating her unavailability to try the case beginning September 21.

A pre-trial conference in the instant case was scheduled for September 17. On the day of the conference, Carroll spoke with a law clerk for Justice Karla Moskowitz of the New York State Supreme Court, the state court judge before whom Carroll claimed to be scheduled to appear for trial on September 21. In response to Carroll's inquiry about an adjournment of the state court trial, the clerk told Carroll that an adjournment would not be granted. At the pre-trial conference with Judge Conti on September 17, Carroll was asked by Judge Conti if she had filed the pre-trial materials she had been ordered to file seven days before trial. Carroll's response was:

"No, and I don't intend to file them today because I am on trial."

Shocked by what he perceived to be "utter contempt and lack of respect" for the court, and citing the ample notice Carroll had had regarding the trial date and the fact that the case had been on the trial ready list for almost a year, Judge Conti refused to postpone the trial date. When he told Carroll that he expected to see her at 9:30 a.m. on September 21 to begin the trial, Carroll's response was:

"I will not be here on Monday."

Judge Conti then told Carroll in no uncertain terms to inform her client that failure of Carroll to appear when ordered would result in dismissal of her client's case and possibly other sanctions.

On September 21, 1992, Carroll did not appear in the federal court. Instead, she appeared in the state court. She had Justice Moskowitz's clerk call Judge Conti to confirm her presence in the state court. Alan Friess, Carroll's husband and a partner in the law firm in which Carroll serves of counsel, appeared before Judge Conti, not to try the case, but to inform the court that Carroll was unavailable to start trying the instant action because of her state court engagement.

Based on Carroll's failure to appear for trial, Judge Conti filed an Order Re Dismissal and Sanctions dismissing appellant's action pursuant to Fed.R.Civ.P. 41(b) for failure of Carroll to prosecute the action and for Carroll's noncompliance with the court's order to proceed. The court also imposed sanctions on Carroll in the amount of $36,483, representing the costs and fees incurred by appellees' counsel in preparing for trial.

On appeal, appellant claims that the court abused its discretion in dismissing her action and in imposing sanctions on Carroll.

## II.

### (A) *Dismissal of Action*

We have long recognized that "dismissal for want of prosecution is a matter committed to the discretion of the trial judge." *Merker v. Rice,* 649 F.2d 171, 173 (2 Cir. 1981). Since dismissal, however, is "an especially drastic remedy, reserved for 'rare occasions,' ... the judge's undoubtedly wide latitude is conditioned by certain minimal re-

quirements." *Id.* at 173–74 (citations omitted). On appeal, we "assess the dismissal in light of the record as a whole." *Harding v. Federal Reserve of New York,* 707 F.2d 46, 50 (2 Cir.1983). In particular, we examine the following factors to determine whether the court properly dismissed the action for failure to prosecute:

"(1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions."

*Romandette v. Weetabix Co.,* 807 F.2d 309, 312 (2 Cir.1986) (citing *Harding, supra,* 707 F.2d at 50). In reviewing the dismissal in view of the above factors, we are mindful that the court's decision must be upheld absent an abuse of discretion. *Harding, supra,* 707 F.2d at 50.

Appellant contends that, since the delays during the pre-trial phase of the instant action were not solely her fault, the first factor of duration of failure to prosecute was not satisfied here. This factor, however, is not relevant where, as here, Carroll failed to comply with two court orders and otherwise demonstrated a lack of respect for the court. *Ali v. A & G Co.,* 542 F.2d 595, 596 (2 Cir.1976) (affirming dismissal with prejudice where counsel failed to appear for trial despite no showing of delay). Even if the delay were relevant, however, there was sufficient evidence to support an appropriate finding by the court. While both parties in fact were responsible for many delays during the pre-trial stage of the case, the court was warranted in finding that Carroll's behavior was particularly egregious. Indeed, her failure to return appellees' many phone calls and letters requesting assistance in preparing the joint pre-trial order and her filing of the proposed pre-trial order as a final one without consulting appellees' counsel resulted in unnecessary delay.

While the delay caused by Carroll's behavior might be said to be minimal in view of her

offer to begin trying the case ten days later on October 1, 1992, we have upheld a dismissal for failure to prosecute where a plaintiff's refusal to proceed to trial was of much shorter duration. *Maiorani v. Kawasaki Kisen K.K., Kobe*, 425 F.2d 1162, 1163 (2 Cir.) (counsel offered to start trial two days later than scheduled), *cert. denied*, 399 U.S. 910 (1970). Furthermore, to excuse Carroll's delay here would be to ignore the fact that when delays are "multiplied over and over for one reason or another in one case after another, as [they] surely [are] and would be once the bar realizes that deadlines mean nothing, the net result is the build-up of a paralyzing backlog of pending cases." *Harding, supra*, 707 F.2d at 52 (MacMahon, J., concurring).

Turning to another factor, we must consider whether Carroll received notice that further delay would result in dismissal. *Romandette, supra*, 807 F.2d at 312. Here, despite her claims to the contrary, Carroll indisputably received such notice. At the pre-trial conference on September 17 Judge Conti specifically told Carroll that if she was not going to appear for trial on September 21, then "You better tell your client the case will be dismissed." Thus, Carroll clearly was notified that her client's action would be dismissed and that other sanctions might be imposed if she did not appear on the scheduled date ready for trial.

We also must determine whether appellees would have been prejudiced by further delay. *Romandette, supra*, 807 F.2d at 312. While prejudice resulting from unreasonable delay may be presumed as a matter of law, *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2 Cir.1982), even absent such a presumption appellees would have been prejudiced here. Indeed, appellees spent much time and money preparing for a trial to begin on September 21. Further, since failure to proceed on September 21 would have resulted in the case being restored to Judge Haight's docket and thus have been delayed even longer, some of appellees' witnesses likely would have been unavailable or their recollection of the events at issue may well have been diminished.

Considering whether the court balanced the need to alleviate court congestion with appellant's right to due process, *Romandette, supra*, 807 F.2d at 312, it is well established that "[t]he failure to be ready for trial . . . is one of the basic causes creating a backlog of calendars." *Davis v. United Fruit Co.*, 402 F.2d 328, 330 (2 Cir.1968), *cert. denied*, 393 U.S. 1085 (1969). Here, Judge Conti clearly recognized that a delay in this trial would cause serious problems. Since his schedule afforded him little flexibility to reschedule trials, postponing this one would have resulted in the case being put back on Judge Haight's docket—thus exacerbating an already crowded docket and delaying the case even longer. Such a result would have been directly contrary to Judge Conti's purpose in sitting by designation in the Southern District in the first place: to alleviate an increasing backlog of cases. Indeed, as Judge Conti remarked, "Ms. Carroll was fully aware that this court was visiting the Southern District for a limited period of time. Her office was informed that trial dates were firm, since this court simply did not have the same flexibility of docket management which it might enjoy in its home district."

These considerations of court congestion were balanced by the court against appellant's due process rights. Judge Conti recognized that dismissal is not favored because it imposes a penalty upon the client for her attorney's misconduct. *Theilmann v. Rutland Hosp., Inc.*, 455 F.2d 853, 855 (2 Cir. 1972). Nevertheless, Judge Conti found that Carroll's failure timely to file her pre-trial materials, failure to appear for trial, and the disrespect for the court that she displayed at the pre-trial conference warranted dismissal despite the consequences to appellant. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962) (dismissal of claim because of counsel's unexcused conduct does not impose unjust penalty on client). We agree. We also observe that, although appellant has lost her action against appellees, she may well be able to commence an action against her attorney.

Finally, appellant contends that the court did not assess the efficacy of sanctions less severe than dismissal. *Harding, supra*, 707 F.2d at 51. This claim, however, fails in view of Judge Conti's statement that *"no lesser*

*sanction,* other than award of fees and costs to the defendant, is appropriate or would be sufficiently potent given Ms. Carroll's behavior and actions." (emphasis added). This statement demonstrates that the court did consider lesser sanctions but concluded that they were not justified in view of Carroll's particularly contemptuous and disrespectful behavior. Based on her behavior throughout this proceeding we agree.

·We hold that the court did not abuse its discretion in finding that dismissal was necessary both to reform Carroll's conduct and to re-establish the court's authority to manage its calendar.

### (B) *Imposition of Monetary Sanctions*

■ Appellant contends that the court abused its discretion in imposing monetary sanctions on Carroll without affording her an opportunity to establish that appellees caused some of the delay, or that the costs and fees claimed by appellees' attorneys were unreasonable. *Ford v. Alfaro,* 785 F.2d 835 (9 Cir.1986). This claim need not detain us long.

Despite receiving notice of appellees' attorneys' claims for costs and fees, Carroll failed to submit affidavits to dispute the amount of costs and fees claimed. Further, while Carroll did send a letter to the court seeking an opportunity to address issues raised in the application for costs and fees, she failed to make a motion to request such relief. This practice of "litigation by letter", although common, is an insufficient means of seeking relief from a court. *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 692 n. 6 (Bankr.S.D.N.Y.1992) ("Litigation by Letter", although a pervasive practice in the Southern District, "has been repeatedly criticized and condemned by the ... judges in this district" because it "contributes to the confusion and overload of an already burdened system...."). Since Carroll failed to make a motion objecting to the award of costs and fees, the court did not abuse its discretion in not affording her an opportunity to be heard orally on these issues.

We hold that the imposition of monetary sanctions on Carroll was well within the court's discretion.

This case is a striking illustration of how counsel should *not* behave in a trial court. It impelled the trial judge to state on September 21, 1992, referring to Carroll:

> "Now, I have seen a lot of attorneys in my 25 years as a judge. I've never seen any attorney in my whole judicial career that has such contempt and such an attitude toward the Court."

We intend our decision today in this case as a sharp warning that counsel may not engage in such conduct with impunity in a United States District Court in this Circuit.

### III.

To summarize:

We hold that the court did not abuse its discretion in dismissing with prejudice appellant's action because of her attorney's failure to comply with an order of the court and for failure to prosecute the action. We also hold that the court did not abuse its discretion in imposing monetary sanctions on appellant's counsel

Affirmed.