STERLING PROMOTIONAL CORP.,
Plaintiff–Counter–Defendant–
Appellant,

v.

GENERAL ACCIDENT INSURANCE
COMPANY OF NEW YORK, a/k/a/
CGU Insurance, Defendant–Appellee,

SGS Testing Company, Inc., De-
fendant–Cross–Defendant–
Appellee,

Travelers Property & Casualty Compa-
ny, Defendant–Cross–Claimant–
Cross–Defendant–Appellee.

Docket No. 03–7150.

United States Court of Appeals,
Second Circuit.

Jan. 6, 2004.

Benjamin J. Golub, Rogovin, Golub, Bernstein & Wexler, New York, NY, for Plaintiff–Appellant.

James W. Carbin, Duane Morris LLP, Newark, NJ, for Defendant–Appellee Travelers Property & Casualty Co.

Present: OAKES, SOTOMAYOR, and WESLEY, Circuit Judges.

## SUMMARY ORDER

Familiarity is assumed as to the facts, the procedural context, and the specification of appellate issues. Briefly, appellant Sterling Promotional Corp. ("Sterling") brought suit against its first-party marine insurer, appellee Travelers Property & Casualty Co. ("Travelers"), in the United States District Court for the Southern District of New York. Sterling sought a declaratory judgment that its policy with Travelers covered damage to a shipment of teddy bears. In a judgment entered on January 27, 2003, the district court (Owen, J.) dismissed Sterling's case pursuant to Federal Rule of Civil Procedure ("FRCP") 37(b)(2) and (d), and FRCP 41(b). It did so after Sterling's president, Steven Linder, repeatedly failed to appear for his own deposition, even after the court ordered him to appear. The court also held Sterling and its attorney, Benjamin J. Golub, jointly and severally liable for Travelers' attorneys' fees.

A district court may dismiss a plaintiff's case "for failure of the plaintiff to prosecute or to comply with ... any order of court." Fed.R.Civ.P. 41(b). Similarly, a district court may dismiss where a plaintiff fails to comply with discovery orders, including the failure to attend its own deposition. Fed.R.Civ.P. 37(b)(2), (d).[1] A dis-

---

1. District court also have inherent power to control proceedings, and "[o]ne component of a court's inherent power [to control cases] is the power to assess costs and attorneys' fees against either the client or his attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *United States v. Int'l Bhd. of Teamsters*, 948 F.2d

missal for failure to comply with discovery "is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault on the part of the prospective deponent." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir.1990) (quotation marks, internal and external citations omitted). Nevertheless, because of its need to control the proceedings before it, "[a] district court has broad power to impose ... sanctions in response to abusive litigation practices." *Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir.1997). This Court thus reviews the imposition of such sanctions only for abuse of discretion. *Id.*

The factors relevant in deciding whether to grant a motion for dismissal, when it is based on the failure to comply with a court order, or the failure to comply with discovery, include (1) the duration of the offending conduct, (2) whether notice was given that the conduct could result in dismissal, (3) whether the conduct prejudiced the movant, (4) the balance of the court's need to manage its docket against the parties' interests in being heard on the merits, and (5) the possibility that a lesser sanction would be effective. *See Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 62–63 (2d Cir.2000) (factors analyzed in reviewing dismissal under Rule 41(b)); *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y.2002) (similar factors under Rule 37(b)) (citing *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852–54 (2d Cir.1995)).

■ First, Sterling's president, Linder, effectively evaded his deposition for over two years. Sterling argues that it did not evade "all meaningful discovery" for that period of time. It notes that it timely complied with some of Travelers' discovery requests, and was prepared to produce an employee, Ms. Arce, for the first scheduled deposition. Further, Sterling argues that the failure of Linder to appear at subsequently scheduled depositions was justified by his demanding work schedule, a medical problem, and his pending divorce action.

However, despite being served with a discovery request in September 2000, Sterling did not agree to schedule a deposition until the district court ordered it over one year later. Travelers concedes that it canceled that initial deposition, but argues that it then took two more letters to the court to get Sterling to produce Linder for a deposition on May 15, 2002. Linder unexpectedly terminated that deposition after just over one hour, citing a non-emergency doctor's appointment. Sterling promised to reschedule, but did not do so until Travelers filed a motion to dismiss. Sterling then canceled a July 26, 2002 deposition on July 25, 2002. At the next scheduled deposition, September 5, 2002, Linder and counsel walked out when Travelers' counsel took a lunch break, despite having been told prior to the session that there would be such a break. Finally, Linder, without timely notice, failed to appear for his deposition on October 3, 2002. In sum, after over two years and a motion to dismiss, Travelers remained unsuccessful in securing Linder's deposition. Thus, although Sterling did partially cooperate in discovery, its failures were notable, substantial, and recurring.

Second, Sterling was clearly on notice that its failure to produce Linder for deposition would result in dismissal. Travelers moved for dismissal on June 19, 2002.

1338, 1345 (2d Cir.1991)(quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Because the district court did not abuse its discretion under its statutory authority, there is no need to analyze the court's invocation of its inherent power.

Sterling's attorney told the court on October 3, 2002, that he had informed Linder of the consequences of failing to appear on that day. Indeed, that Sterling was clearly on notice that it risked dismissal is undeniable given that Linder submitted an affidavit "in opposition to defendant's motion to dismiss," in which he specifically contended that "it would be unfair and unreasonable [for the district court] to dismiss" Sterling's case under the circumstances.

Third, Travelers was prejudiced by the inability to depose Linder. Despite the fact that Travelers had obtained some relevant evidence from Sterling, and had deposed Sterling's expert, Sterling is purportedly a "one man" business—and Travelers has not been able to speak to the "one man." Its inability to speak with Linder, and the unlikelihood of being able to do so (given Linder's past behavior) prejudiced Travelers' ability to defend itself.

Fourth, the district court balanced its interest in maintaining its docket against Sterling's right to be heard on the merits. It is clear from the record that the district court had a great deal of difficulty getting Linder to schedule and appear at his deposition. In an October 1, 2002 conference call during which the court ordered the October 3, 2002 deposition, the court repeatedly asked Sterling's attorney why he was ignorant of Linder's schedule; the court expressed its frustration with Linder's behavior and noted, "I have to run this court and the only way I can run this court is to say something's going to happen." The court thus weighed its interest in managing its docket against Sterling's interest in being heard.

Fifth, the district court considered the efficacy of lesser sanctions. This Court has noted that were it "to adopt a position that overly inhibits the imposition of the harsher sanctions authorized by Rule 37,

[it] would turn the rule into a 'paper tiger.'" *Sieck v. Russo,* 869 F.2d 131, 134 (2d Cir.1989) (affirming the granting of a default judgment where "defendants were aware of, and consciously absented themselves from, ... scheduled depositions"). The district court stated that it had "considered other alternatives to dismissal, including contempt citations[, but that] Sterling's ongoing intransigence and cavalier attitude toward the facts [led it] to conclude that Linder ha[d] no intention of subjecting himself to a meaningful attendance at a deposition." Although Sterling offers explanations for much of its failure to produce Linder, the district court was in the best position to assess the credibility of those explanations. Its conclusion that a lesser sanction would not have been effective is thus due deference, and that conclusion was not an abuse of discretion.

■ In addition to arguing that the district court failed to properly consider the relevant factors, Sterling argues that the court failed to give any weight to the fact that Sterling offered, in Linder's final (untimely) affidavit, to voluntarily discontinue the suit if Linder failed to appear for the deposition one more time. This Court has aptly noted that a "plaintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall." *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir.1979). Linder's eleventh-hour attempt to comply does not alter the fact that Sterling repeatedly failed to comply and violated a court order in the process.

■ Sterling also argues that the district court should have taken account of Travelers' own failure to comply with discovery. But even if "both parties in fact

were responsible for many delays during the pre-trial stage of the case, the [district] court [may be] warranted in finding that [the sanctioned party's] behavior was particularly egregious." *Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir.1993). There was thus no error here in the district court finding that it was Sterling that was deserving of sanctions.

In sum, the factors relevant to reviewing the district court's dismissal do not clearly indicate that the district court abused its discretion in dismissing Sterling's case. Further, both dismissal and an award of attorneys' fees are among the sanctions available under Rule 37. *See* Fed.R.Civ.P. 37(b)(2). Thus, the court similarly did not abuse its discretion in ordering Sterling to pay Travelers' attorneys' fees.

■ Sterling also relies on *Schlaifer Nance & Company, Inc. v. Estate of Warhol*, 194 F.3d 323 (2d Cir.1999), in claiming the court failed to put appellant and its attorney on notice of possible monetary sanctions and thereby violated their rights to due process in imposing such sanctions. This Court has noted that "[d]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Schlaifer Nance*, 194 F.3d at 334 (quotation marks and citation omitted). However, "[a]s a general rule, a court is not obliged to give a *formal* warning that sanctions might be imposed for violation of the court's orders." *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 128 F.3d 99, 102 (2d Cir.1997) (emphasis added).

Sterling contends that neither the district court nor Travelers' motion to dismiss provided it with notice that it might be subject to monetary sanctions. However, the affidavit in support of Travelers' motion to dismiss requested that the court "direct plaintiff Sterling ... to reimburse defendant Travelers the legal fees and ex-penses occasioned by this motion practice." Further, Travelers expressly brought its motion under Rule 37. Rule 37 clearly provides that the court may impose monetary sanctions in the form of attorneys' fees. *See* Fed.R.Civ.P. 37(b)(2). Given that Sterling was on notice of the Rule 37 motion for four months prior to the court dismissing its case, Sterling had notice of the possibility of sanctions and opportunity to argue why such sanctions should not be imposed. Further, Sterling offered no adequate justification for the failure of Linder to appear at his final, court ordered deposition. Thus, the court did not violate Sterling's rights to due process by ordering it to pay Travelers' $2550 in attorneys' fees.

■ Similarly, Mr. Golub, Sterling's attorney, claims that *he* was given no notice of the possibility of being jointly and severally liable for monetary sanctions. However, Golub was aware that Travelers brought its motion to dismiss under Rule 37, and was thus aware of the Rule's provision that "the court shall require the party failing to obey the order *or the attorney advising that party or both* to pay the reasonable expenses, including attorney's fees, caused by the failure...." Fed. R.Civ.P. 37(b)(2) (emphasis added). In addition, the court had made it clear to Golub that it considered Golub, and not merely Sterling or Linder, at fault. The court informed Golub that his termination of the September 5 deposition, on the ground that Travelers' counsel wanted to eat lunch, was "rather shabby treatment of an adversary." The court also noted that its difficulty in scheduling Linder's deposition was compounded by Golub's ignorance of Linder's schedule. Indeed, during the October 1 conference call, the court stated, "I'm getting a snootful of all of this. You don't know about this, you don't know about that, you can't do this, you can't do that.... I want to get the deposition finished." During the October 3 confer-

ence call, the court admonished Golub for failing to inform the court that Linder was not going to appear, stating, "you had an obligation as a lawyer the minute you knew that [Linder] was taking the position that he couldn't make it, that you had a duty to get in touch with me forthwith." Thus, Golub was on notice that he was under the umbrella of the court's statutory power to sanction.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.