**Ade DOSUNMU, A.K.A. James James, Plaintiff,**

**Mike Dosunmu, Intervenor,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A. CV01–4605DGT.**

United States District Court, E.D. New York.

March 28, 2005.

As Amended March 30, 2005.

Ade Dosumu, Oakdale, LA, for Plaintiff.

Kathleen Anne Nandan, United States Attorneys Office, Eastern District of New York, Brooklyn, NY, for Defendant.

## AMENDED OPINION

TRAGER, District Judge.

This is an action brought by Ade Dosunmu ("plaintiff"), and his brother Mike Dosunmu ("intervenor") (collectively, "claimants"), for a return of personal property administratively forfeited to the government after it was seized by the United States Customs Service ("Customs"). On July 3, 2001, plaintiff filed a complaint seeking return of the property, alleging that it belonged to him. On April 5, 2002, the Intervenor moved for permission to intervene claiming that the seized property belongs to him.

Defendant moves for dismissal of the complaint or, in the alternative, for summary judgment. For the following reasons, defendant's motion to dismiss is granted.

## Background

On January 21, 1999, plaintiff attempted to enter the United States using a fraudulent passport. *See* Declaration of Ronald Simon, dated March 10, 2004 ("Simon Decl.") at 1; Declaration of Ade Dosunmu ("Dosunmu Decl.") ¶ 2 ("On January 21, 1999, I was arrested at John F. Kennedy Airport for illegal entry into United States, by Immigration and Naturalization Service"). He was detained at the border and, on September 8, 1999, pled guilty to unlawfully reentering the United States. On January 14, 2000, he was sentenced to a term of 41 months' imprisonment and three years' supervised release. His subsequent petition under the habeas statute, 28 U.S.C. § 2241, was denied by this court in an order dated November 17, 2002 ("November 17, 2002 Order").[1]

During his attempted arrival in 1999, plaintiff declared on a Customs declaration that he was carrying $2,500 worth of goods. *See* Declaration of Ronald Simon ("Simon Decl.") at Ex. 1 (Plaintiff's Customs declaration). However, a routine inspection of plaintiff's bags revealed a large amount of undeclared merchandise, including jewelry, watches and clothing. *See* Simon Decl. ¶ 2.[2] Customs also found in plaintiff's possession two driver's licenses and two credit cards bearing the names of three distinct individuals.

On his Customs declaration, plaintiff listed his name as James Edward James,

---

1. Although the court had issued a stay of deportation during the pendency of the habeas petition, petitioner was accidentally deported on October 9, 2002, approximately five weeks before the resolution—and denial—of his habeas petition. The mistake was apparently the result of confusion generated by the lifting of a stay of deportation by the United States Court of Appeals for the Fifth Circuit in

another matter involving plaintiff. The government apologized and offered to contact the plaintiff (the petitioner in the habeas action) so that he could return to the United States. *See* November 17, 2002 Order at 2.

2. The seized property, which plaintiff admits he did not declare, is forfeitable under 19 U.S.C. § 1497.

Jr., information which Customs quickly determined to be false. *See* Simon Decl. Ex. 4. Plaintiff's Customs declaration also listed his address as 3250 Peachtree Road, Atlanta, Georgia, 30326.

At the time of his unlawful reentry, plaintiff had been barred from illegally reentering the United States. *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss at 2; *id.* at 3 (noting determination by INS that plaintiff "was subject to an order of removal"). Plaintiff claims that he had no knowledge of the outstanding deportation order. *See* Dosunmu Decl. ¶ 4. He was also subject to an outstanding order of restitution for $143,190.43 stemming from an earlier conviction for credit-card fraud in violation of 18 U.S.C. § 1029(a)(2). *See United States v. Dosunmu,* 1:94–CR–486–01–GET (N.D.Ga.); Declaration of AUSA Kathleen A. Nandan ("Nandan Decl.") Ex. I (deposition of Ade Dosunmu, July 18, 2002) at 36. He was sentenced to 18 months' imprisonment and three years of supervised release for that offense. *See* Nandan Decl. Ex. I at 36, 40–41. Plaintiff had also been arrested for forgery (for which he was convicted and sentenced to one year's imprisonment). *See id.* at 37–40. At various times, plaintiff has supplemented his income with "credit card fraud." *Id.* at 27. Indeed, plaintiff appears to have used at least one of the fraudulent credit cards discovered by Customs on January 21, 1999 to make purchases on the plane ride before his arrival and arrest in the United States. *Id.* at 64.

## (1)

### The Underlying Arrest and Forfeiture

After Customs found the additional driver's licenses and credit cards in plaintiff's possession, it conducted an investigation of his documentation and referred him to the Immigration and Naturalization Service ("INS"),[3] at which time it was determined that he was attempting to illegally enter the United States. Simon Decl. ¶¶ 3–4. Plaintiff was arrested, and the undeclared merchandise and fraudulent items were seized by Customs, at which time Customs initiated an administrative forfeiture proceeding. *Id.* at ¶¶ 4–5.

For several months, Customs attempted to provide notice to plaintiff regarding the intended forfeiture of the merchandise. Rather than inquire into plaintiff's whereabouts by contacting INS, Customs mailed Notices of Seizure to the same Atlanta address plaintiff had provided on his Customs declaration, which Customs had already determined to be partially, if not completely, false. Moreover, the notices Customs sent to the Atlanta address were returned by the United States Postal Service and marked "Return to Sender." *See* Simon Decl. ¶ 7.

Because plaintiff had provided Customs with false information, or because plaintiff was incarcerated, or perhaps for both reasons, it appears that the notices never reached him. *See* Simon Decl. ¶¶ 6–8. Customs also posted announcements of the intended forfeiture in *Newsday,* a New

---

**3.** Under the Homeland Security Act of 2002, Pub.L. 107–296 § 441, 116 Stat. 2135, 2193 (2002), 6 U.S.C. §§ 202(3) and 251, on March 1, 2003, the INS no longer exists as an independent agency within the Department of Justice and its functions have been transferred to the Department of Homeland Security. United States Immigration and Customs Enforcement ("ICE"), a bureau within the Department of Homeland Security, now bears responsibility for enforcing the immigration laws. *See generally* I.C.E. Press Office, U.S. Dep't of Homeland Security, Fact Sheet, Immigration and Customs Enforcement (ICE) (Oct. 6, 2004), available at http://www.ice.gov/graphics/news/factsheets/index.htm. As a matter of convenience, and in accordance with the parties' pleadings in this case, this opinion will continue to refer to the agency as the "INS."

York-area newspaper, on May 5, 12, and 19, 1999, *see* Simon Decl. ¶ 9,[4] but received no response to these postings. At the end of the notification period, the seized property was administratively forfeited to the government. On October 26, 1999, the watches, jewelry and certain articles of clothing were sold for $8,050.00, and on August 26, 1999, the remaining items, deemed counterfeit, were destroyed. *See* Simon Decl. Ex. 7 and Ex. 8.

Although plaintiff never received notice of the administrative forfeiture proceeding, he independently filed for a return of the seized items on July 10, 2001, roughly two years after the completion of the forfeiture process. Proceeding *pro se,* plaintiff filed an application pursuant to Rule 41(e), Fed. R.Crim.P., for return of the property seized by Customs. *See* Nandan Decl. Ex. A (plaintiff's "Application For Return of Seized Property") at ¶ 2.[5] Plaintiff alleged that none of the seized property had been acquired through illegal means and that he was the rightful owner of the items in question. *See id.*

By motion dated April 5, 2002, plaintiff's brother, also proceeding *pro se,* moved for permission to intervene in this action, claiming that he was the rightful owner of the items seized by Customs. *See* Nandan Decl. Ex. F. ("Application For Return of Seized Property Pursuant to F.R.Crim. P.

Rule 41(e)"). The intervenor, who appears to live in the Netherlands, contends that he gave plaintiff the property for safekeeping pending the intervenor's intended trip to the United States. *See* Nandan Decl. Ex. F at 2. The intervenor attached to the application an itemized list of the property he purportedly gave plaintiff.

### (2)

### The Discovery Period

### (a) Plaintiff

Prior to plaintiff's deportation on October 9, 2002, the assistant U.S. attorney assigned to the case, Kathleen A. Nandan ("AUSA Nandan"), took his deposition on July 18, 2002 and subpoenaed the banks issuing the credit cards found in plaintiff's possession shortly before his arrest. *See* Nandan Decl. ¶ 10. During the deposition, plaintiff was asked about the items he claimed were rightfully his, specifically, the dates when, and locations where, the items were purchased. Plaintiff was unable to recall how he obtained the property, or the property's value. *See* Nandan Decl. Ex. I. at 73–82. Neither has plaintiff been able to provide any receipts for the merchandise.

After plaintiff was removed to Nigeria, he advised AUSA Nandan that he wished to proceed with his lawsuit for the return

---

**4.** Defendant's Statement of Undisputed Facts incorrectly states that the notices appeared in the *New York Post. See* Defendant's Statement of Undisputed Facts at 2.

Claimants do not controvert the statements contained in defendant's Statement of Undisputed Facts. Ordinarily, a party's failure to controvert statement of undisputed facts constitutes those facts being deemed admitted for the purposes of a motion for summary judgment. *See Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003) (party's failure to controvert statement of undisputed facts constitutes those facts being deemed admitted for the purposes of the motion); *Gubitosi v. Kapi-*

ca et al., 154 F.3d 30, 31 n. 1 (2d Cir.1998) (same). However, this does not present an issue because this action will be dismissed based on claimants' failure to prosecute this action, not defendant's motion for summary judgment. In that regard, most of the key facts are not in dispute.

**5.** Plaintiff claims that the value of the properties seized by Customs exceeded $89,000.00. *See* Dosunmu Decl. ¶ 14. However, this figure is apparently at odds with plaintiff's prior representations of the property's value. *See, e.g.,* Nandan Decl. Ex. I at 130 (noting letter to court in which plaintiff claimed the goods were worth more than $40,000).

of seized property. *See* Nandan Decl. Ex. N at 1. AUSA Nandan requested that the magistrate judge conduct a hearing, and the request was granted. Accordingly, AUSA Nandan contacted the U.S. consulate in Lagos to arrange for a video hearing before the magistrate judge. Upon learning that the consulate lacked any video-conferencing capability, AUSA Nandan attempted to arrange a telephone conference and, in preparation, sent plaintiff letters on three separate occasions to coordinate witness lists and to stipulate to various facts to shorten the proceedings. *See* Nandan Decl. ¶ 15. AUSA Nandan's letters, sent via international Federal Express on June 23, September 23 and November 4, 2003, were met with no response. *Id.*

### (b) Intervenor

Defendant, upon receiving the intervenor's motion, served him with a set of interrogatories, document requests and a notice of deposition. These items were sent via Federal Express on May 31, 2002 and were apparently signed for by the intervenor. *See* Nandan Decl. ¶ 7; *see also id.* at Ex. G. On June 20, 2002, Defendant received a telephone call from a woman claiming to be the intervenor's wife, who inquired as to how her husband should respond to the documents. *See* Nandan Decl. ¶ 8. AUSA Nandan explained that the intervenor should contact the U.S. Attorney's Office to schedule his deposition. *See id.*

Subsequently, AUSA Nandan sent two letters to the intervenor, dated July 9 and July 23, 2002, asking that he contact the U.S. Attorney's Office to schedule his deposition. Those letters were also sent international Federal Express, and their delivery was confirmed. *See id.* at ¶ 9.

In an order dated September 10, 2002, Magistrate Judge Azrak directed the intervenor to respond to the defendant's outstanding discovery requests by October 10, 2002 and to contact AUSA Nandan to schedule a deposition sometime between October 21 and 31, 2002. *See id.; see also* Dkt. No. 21. The U.S. Attorney's office sent an additional copy of the letter to the intervenor via international Federal Express. *See id.* at ¶ 11. On October 22, 2002, the intervenor called AUSA Nandan and informed her that he had been previously unable to answer the court's order and promised to send documents responsive to the defendant's discovery demands. *See* Nandan Decl. ¶ 12. He further stated that he would be unable to submit to a deposition within the time frame ordered by the court because he would not be in the United States until the following year. *See id.* AUSA Nandan advised the intervenor to ask the court to modify its order, but no communication followed. *See id.* On February 3, 2003, AUSA Nandan moved to strike the intervenor's claims. *See id.* at ¶ 14 That motion is still pending.

### (c) The Claimants' Attorneys

On March 2, 2004, nearly two years after AUSA Nandan's attempts to coordinate discovery and other pre-trial proceedings, Magistrate Judge Azrak received a letter from Gbenga Ojekunle, Esq., an attorney in Lagos, Nigeria, claiming to represent the claimants in this matter and suggesting that the parties explore the possibility of settling this case. *See* Nandan Decl. Ex. P at 2.[6] AUSA Nandan's office was not copied on that letter but was provided a copy by the magistrate judge's chambers. *See* Nandan Decl. ¶ 16.

On August 20, 2004, the claimants' attorney, Mr. Ojekunle, filed a brief as well as supporting declarations purporting to establish the intervenor's ownership in the seized (and forfeited) property. Neither

---

**6.** After a search of all court records, the Clerk of Court was unable to find any evidence that Mr. Ojekunle has ever been admitted to practice in the Eastern District of New York.

declaration includes any receipts establishing the claimants' ownership in the seized property. The attorney declaration merely rehearses the claimants' desire to pursue their claims and interest in settling this case.

The brief, for its part, blames all delay in this case on the government, whose requests for extensions of time[7] and premature deportation of the plaintiff purportedly inhibited claimants' efforts to prosecute the action. However, the brief and declarations fail to discuss or explain in any way how the extensions of time or plaintiff's premature deportation prevented the claimants from complying with their discovery obligations and prosecuting their case.

### Discussion

Defendant, noting the nearly two-year period of silence by both claimants and the lack of substantive response to the arguments it raises in its moving papers, moves to dismiss for failure to prosecute pursuant to Fed.R.Civ.P. 41(b). Defendant also moves to dismiss the intervenor's claims for failure to obey discovery orders, see Fed.R.Civ.P. 37. Alternatively, defendant moves for summary judgment, pursuant to Fed.R.Civ.P. 56, arguing that the administrative forfeiture satisfied due process, plaintiff received adequate notice and that, in any event, neither claimant can establish a legitimate interest in the property. Defendant also moves to strike various statements in the Ojenkule declaration that contain inadmissible hearsay.

### (1)

### Proper Notice

■ The plaintiff's contention, broadly and liberally construed, is that defendant knew or should have known of his interest in the seized property but failed to take reasonable steps to notify him of the forfeiture proceedings. In that regard, there is a question whether publishing notices in *Newsday* and mailing several notices of seizure to the Georgia address supplied by the plaintiff constitutes "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Under *Mullane* and its progeny, "the proper inquiry is whether the [government] acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice." *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988).

It is undisputed that plaintiff was incarcerated upon his arrival in the United States. Moreover, it was *Customs* which transferred plaintiff to INS custody. It is, therefore, evident that Customs should have known that plaintiff would end up in a federal detention facility once he was handed over to the INS. At a minimum, Customs should have inquired into plaintiff's whereabouts rather than merely send the Notices of Seizure to the address indicated on the declaration, which it knew contained a false name—especially after those letters were returned undeliverable.

Remarkably, defendant contends that "Customs' good faith efforts to notify plaintiff of the forfeiture cannot be disputed." *See* Memorandum of Law at 15. But under established law, this is not sufficient notice. *See Weigner,* 852 F.2d at 650 n. 4 (2d Cir.1988) (notice is not "reasonably calculated" to apprise the property owner if the government knew that the claimant was not at the address to which notification was sent). In that regard, defendant is incorrect in asserting that serving the plaintiff where he is incarcerated "places an incredible onus upon the Government." *Id.* To locate plaintiff, Customs only needed to contact the INS, which could have

---

7. The only requests for extensions of time made by defendant took place in 2001, in conjunction with this court's initial order to show cause. The requests were granted in each case.

easily provided the necessary information about his whereabouts. Defendant admits that it did not endeavor to do this, and it is, therefore, apparent that notice was insufficient here. *See Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (per curiam) (in a forfeiture action, notice mailed to interested party's home address was inadequate where government knew party was incarcerated awaiting trial, and where party remained in custody throughout forfeiture proceedings). *See also Cepulonis v. United States*, 543 F.Supp. 451 (E.D.N.Y.1982) (where plaintiff was in federal custody at all times subsequent to seizure of the vehicle, forfeiture after notice by publication and mail to his home address deprived the plaintiff of property without due process of law). Given defendant's efforts, "it cannot be said that [Customs] made any effort to provide notice which was 'reasonably calculated' to apprise [plaintiff] of the pendency of the forfeiture proceedings." *Robinson*, 409 U.S. at 40, 93 S.Ct. 30.

■ Although it is undisputed that the defendant never sent any notice of seizure to the intervenor, there was no reason for defendant to do so. The intervenor filed his motion more than two years after the property had been forfeited. There is no indication in the record that defendant knew or should have known of the intervenor's alleged interest in the property before that time. In any event, plaintiff also swore on his Customs declaration that the property he was carrying belonged exclusively to *him, see* Nandan Decl. Ex. A, further depriving defendant of any reason

to know that the seized property belonged to his brother. Therefore, the intervenor, unlike plaintiff, was not entitled to notice of the forfeiture proceedings.

Accordingly, plaintiff's, but not intervenor's, challenge to the forfeiture will be deemed proper and timely because of the failure by Customs to make reasonable efforts to notify plaintiff of the forfeiture. *See* 18 U.S.C. § 983(e). However, as explained *infra*, plaintiff (as well as the intervenor) has failed to prosecute this action, and thus there is no need to delve further the additional bases upon which defendant's motion for summary judgment might be granted.[8]

### (2)

### Failure To Prosecute

■ Under Rule 41(b), a court may dismiss an action upon a party's failure to prosecute an action or comply with a court order. "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). *See also United States v. Norden Sys., Inc.*, 375 F.3d 248, 251 (2d Cir.2004). Whether or not to grant dismissal on this basis "is largely a matter of the judge's discretion." *Taub v. Hale*, 355 F.2d 201, 202 (2d Cir.1966).

As Judge Posner has observed, "it is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute." *Ball v. City of Chicago*, 2 F.3d 752, 759 (7th Cir.1993). *See also Caribbean*

---

8. Defendant maintains that, even if the declaration of forfeiture were set aside for improper notice, it would simply commence a subsequent forfeiture proceeding under the Civil Asset Forfeiture Reform Act of 2000 ("Reform Act"), Pub.L. 106–185, 114 Stat. 2002 (2002), *amending* 18 U.S.C. § 983(e)(2)(A). However, there is some doubt whether the Reform Act applies to forfeitures, like the one at bar, commenced before the date of the Reform Act's implementation. *See*

*United States v. Duke*, 229 F.3d 627 (7th Cir. 2000) (limiting 18 U.S.C. § 983(e) to administrative forfeitures commenced after August 23, 2000). In any event, this issue need not be explored at this time. Nevertheless, even if defendant were prohibited from instituting another forfeiture action, it could still prevail if claimants failed to prove a right to lawful possession of the property and an equitable right to its return. *See Alli–Balogun v. United States*, 281 F.3d 362, 371 (2d Cir.2002).

*Transp. Sys., Inc. v. Autoridad De Las Navieras De Puerto Rico,* 901 F.2d 196, 197 (1st Cir.1990) (affirming dismissal for failure to prosecute given numerous delays and "the uncertain legal nature of the underlying claims").

Although no single standard governs Rule 41 motions, a number of district courts within the Second Circuit have gravitated toward the same factors applied by that court on appellate review: (1) whether the failures to prosecute caused a delay of significant duration; (2) whether the plaintiff was given notice that further delay would result in dismissal; (3) whether the defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestions balanced against plaintiff's right to an opportunity for a day in court; and (5) whether lesser sanctions would be a more appropriate remedy than dismissal. *See, e.g., Norden,* 375 F.3d at 254; *Martens v. Thomann,* 273 F.3d 159, 180 (2d Cir.2001); *Shannon v. Gen. Elec. Co.,* 186 F.3d 186, 193–94 (2d Cir.1999). *See also Kernisant v. City of New York,* 225 F.R.D. 422, 433 (E.D.N.Y. 2005) (adopting and applying the circuit's five-part test); *Feurtado v. City of New York,* 225 F.R.D. 474, 477–78 (S.D.N.Y. 2004) (same).

Although dismissal for failure to prosecute or to comply with a court order under Rule 41(b) is "one of the harshest sanctions . . . reserved for use only in the most extreme circumstances," *Norden,* 375 F.3d at 251, it is warranted here. The claimants have utterly ignored their obligations with respect to discovery and have failed to move ahead with the litigation. Under

the circumstances, prejudice to defendant "may be presumed as a matter of law." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982); *see also Peart v. City of New York,* 992 F.2d 458, 462 (2d Cir.1993) ("prejudice resulting from unreasonable delay may be presumed as a matter of law").

The claimants have not only ignored the outstanding discovery requests, but also failed to provide a single piece of evidence demonstrating their rightful interest in the property at issue. They have not demonstrated that the forfeited goods were lawfully obtained or destined for a lawful purpose. Indeed, plaintiff stated in his deposition that, prior to his reentry, he had supplemented his income with "credit card fraud," *see* Nandan Decl. Ex. I at 27, and there is ample reason to believe that the goods seized by Customs were secured through similar means, not least plaintiff's use of a fraudulent credit card, discussed *supra,* immediately before his unlawful entry in the United States and the seizure of property in conjunction with that arrest.

■ With respect to the intervenor, nearly three years have elapsed since he was first served with the defendant's discovery requests, and more than two years have passed since Magistrate Judge Azrak put him on notice that failure to respond could lead to a dismissal of his action. *See* Nandan Decl. Ex. M at 1–2 (magistrate judge order). The intervenor's non-compliance with the Magistrate's Azrak's Order is of particular significance given that "the court's orders have been clear, the party has understood them, and the party's non-compliance is not due to factors beyond the party's control." *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852–53 (2d Cir.1995).[9] The fact that

---

9. Just as the intervenor's wife had called AUSA Nandan once, upon receiving defen-

dant's discovery requests, there appears to be no reason why the claimants could not again

the intervenor did not have counsel when the order was issued does not change the analysis. *See McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("all litigants, including pro ses, have an obligation to comply with court orders ... [and] must suffer the consequences of [inaction]").

Equally noteworthy is the intervenor's lack of any substantive response to the defendant's motions to strike his claims or, more recently, for dismissal or summary judgment. His utter silence with regard to this action warrants dismissal of his claim under Rule 41.

Plaintiff, for his part, has been equally dilatory. Defendant first requested plaintiff's participation in coordinating witness lists and exhibits nearly two years ago. Plaintiff provided no response to the three letters, and as a result the conference never took place. The third and final letter sent by defendant specifically advised plaintiff that the defendant would seek dismissal of his claims for failure to prosecute this action.

■ The claimants' absence from the jurisdiction does not constitute a valid excuse in this case. *See Maduakolam v. Columbia University,* 866 F.2d 53, 56 (2d Cir.1989) (plaintiff's prolonged absence from the jurisdiction did not provide a reasonable excuse for a lengthy delay in

prosecuting his action since plaintiff should have left a forwarding address or otherwise stayed in contact with his attorney). Although, as explained *supra,* the defendant accidentally deported plaintiff to Nigeria five weeks before the denial of his petition for habeas corpus, that error does not taint the defendant's overall case: the stay of deportation was not issued in conjunction with this lawsuit and would have been lifted in any event upon adjudication of the habeas petition.

The recent appearance by Gbenga Ojekunle, plaintiff's counsel, does not change this analysis. If anything, the fact that plaintiff now has counsel—who has failed to attempt to contact the U.S. Attorney's office to coordinate discovery — only further warrants dismissal. Counsel's brief accusing defendant of bearing responsibility for claimants' delays is inadequate, and does not constitute an excuse for ignoring the magistrate judge's order. Moreover, the recent declarations submitted by counsel fail to demonstrate the claimants' rightful ownership of or interest in the property. To the extent these submissions even constitute a response, such " 'hopelessly belated compliance should not be accorded great weight.' " *Lyell,* 682 F.2d at 43 (citing *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir.1979)).[10] Under

---

have gotten in touch with the defendant in order to move their case forward, as they were required to do.

10. The claimants assumedly "voluntarily chose this attorney as [their] representative in the action, and [they] cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (failure of plaintiff's lawyer to attend a pretrial conference justified

dismissing the case for want of prosecution). *See also Fitzsimmons v. Gilpin,* 368 F.2d 561 (9th Cir.1966) (when plaintiff's response to a motion to dismiss for want of prosecution made no showing of cause why the action should not be dismissed and wholly failed to explain the absence of any effort to move the action forward during a fifteen month period or to join a local attorney as counsel of record, as required, dismissal was not an abuse of discretion).

the circumstances, there appears no lesser sanction (such as a fine or adverse inference) that could be imposed as an alternate to dismissal. Based on "the record as a whole," *Norden*, 375 F.3d at 254, dismissal is warranted.

Indeed, the Second Circuit has "affirmed dismissals in cases far less egregious than this." *Lyell*, 682 F.2d at 43 (citations omitted). *See, e.g., Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 664 (2d Cir.1980) (delay of six months in completing discovery and proceeding to trial justified dismissal under Rule 41(b)); *Kearney v. City of New York*, 2003 WL 22682721 at *1–2 (S.D.N.Y. Nov. 6, 2003) (Rule 41(b) dismissal warranted where plaintiff failed to respond to several of defendants' discovery requests and did not pursue her claim for a period of approximately four months); *Peter Turnbull v. Board of Educ. of the City of New York*, No. 96 Civ. 4914, 1999 WL 959375 at * 2–3 (S.D.N.Y. Oct. 20, 1999) (delay of between five and ten months "falls comfortably within the time frames found sufficient in successful Rule 41(b) motions to dismiss"); *West v. City of New York*, 130 F.R.D. 522, 525 (S.D.N.Y.1990) (plaintiff's 19 month delay without taking any concrete action was sufficient cause for dismissal under Rule 41(b)). Resolution of this case on defendant's motion to dismiss falls squarely under this established law.

Because claimants have failed to prosecute this action, dismissal is warranted under Rule 41(b). Accordingly, there is no need to delve further into the arguments raised by defendant regarding dismissal pursuant to Rule 37 or summary judgment pursuant to Rule 56. Similarly, there is no need to resolve defendant's request to strike the hearsay statements contained in the declaration of Gbenga Ojekunle.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss the plaintiff's application for a return of seized property is granted.

The defendant's motion to dismiss the intervenor's application is granted as well. The Clerk of Court is directed to close the case.

SO ORDERED.